(Decided April 15th, 1864.)

THE COMMONWEALTH INSURANCE COMPANY *vs.* ZOROBABEL H. H. CROPPER AND THOMAS S. CROPPER.

EVIDENCE: PRACTICE.—Whether under the established practice in this State, evidence, in itself inadmissible, can be withdrawn from the consideration of the jury, after it has been admitted without objection when offered, or within a reasonable time thereafter: *Quære ?*

INSURANCE: DEVIATION: CONSTRUCTION OF WRITTEN CONTRACT: "STEAM BOAT CLAUSE."—By a policy of insurance, the voyage thereby insured, (being from Baltimore to New York,) was described as *"via the Chesapeake and Delaware Canal to Delaware Bay, and from thence by sea to New York."* After this voyage was completed and the vessel had returned to Baltimore, a new contract was entered into for another voyage by the following endorsement upon the original policy, viz: *"It is hereby understood that this policy shall cover $2500 on steamer E. J. D. from Baltimore to New York, at the rate of one and one-half per cent., subject to steam boat clause on vessel valued at $6000."* The words "subject to steam boat clause," were shown to mean, subject to the following clause: "It is understood that the company is not liable for any breakage or derangement of the engine or bursting of the boiler, or any of the parts thereof; or for the effects of fire from any cause connected with the operation of the repair of an engine or boiler, unless the damage be occasioned, and the repairs rendered necessary, by the stranding or sinking of the vessel after her engine and boiler shall have been put in successful operation.    It is also understood that this company is not liable for fuel, wages and provisions, nor for any expense of any delay consequent upon repairs to the engine or boiler of

any kind, or repairs to the vessel, if such repairs are rendered necessary by breakage or derangement of machinery, or bursting of boiler." A policy on freight and cargo, for the same voyage, was effected with the same company, and was "*on a voyage at and from Baltimore to New York.*" The vessel proceeded on her voyage, going *not by way of the Delaware and Chesapeake Canal, but down the Chesapeake Bay to the Atlantic*, and was stranded and lost. In an action upon the two policies of insurance, brought by the insured against the insurers, HELD:

1st. That by the true construction of the written contract, there was no deviation from the voyage covered by the memorandum of insurance.

2nd. That where the course of the voyage to be taken by the vessel, is intended to be restricted to a prescribed track, it must be inserted.

3rd. That the effect of endorsing the memorandum of insurance for the second voyage upon the policy, was to make the new contract subject to the terms and stipulations contained in the policy, *except in so far as they are varied by the terms of the endorsement.* And the endorsement differed from the original policy in this essential particular,—that it described merely the *terminus a quo*, and the *terminus ad quem*, without any restrictive words prescribing the course of the voyage, or any. reference to the restrictions in that respect imposed by the former contract.

4th. That if the immediate or proximate cause of the loss was the stranding the vessel, notwithstanding the loss can be traced back to the breakage of the machinery as its first cause, the *"steamboat clause,"* made part of the contract, will not exonerate the insurer from liability.

APPEAL from the Superior Court of Baltimore City :

This action was instituted on the 8th of September 1857, by the appellees against the appellant, on two policies of insurance, one on the steamer E. J. Dupont, and the other on her freight and cargo, that steamer having been lost while bound on the voyage insured for. The facts are fully stated in the opinion of this Court. The appeal is taken by the defendant from the rulings of the Court below, (LEE, J.)

The cause was argued before BOWIE, C. J., and BARTOL and GOLDSBOROUGH, J.

*S. Teackle Wallis* and *John Stewart,* for appellant :

The counsel for the appellant will limit themselves to the discussion of the following propositions:

1. As to the construction and effect of the steamboat clause, endorsed on the policy on steamer, dated June 4th, 1856, which they will contend absolves the defendant from responsibility, under the facts set forth in the defendant's fifth prayer; see 2 *Western Ins. Co. vs. Cropper*, 32 *Penn. State Rep.*, 351. *Genl. Ins. Co. vs. Sherwood*, 14 *Howard*, 366. *Copeland, et al., vs. Ins. Co.*, 2 *Metcalf*, 437. 1 *Phillips on Ins.*, 431.

2. That the limitation as to the course of the voyage contained in the body of the first policy, restricts both contracts, and is not affected by any parol evidence as to intent, but relieves the defendant from liability because of deviation. 2 *Philips on Ins.*, 2119. *Clagett & Hill vs. Hall*, 9 *G. & J.*, 81. 1 *Greenlf. on Ev.*, 277, 278, 281. *Creery vs. Holly*, 14 *Wend.*, 25. 36 *Eng. Law & Eq. R.*, 113. 2 *Parson's Maritime Law*, 34, 35, and cases cited.

3. That if parol evidence went to the jury as to the character and circumstances of the contracts, the seventh prayer of the defendants should have been granted.

*William Schley*, for appellees:

1. The plaintiff's second prayer, as offered, ought to have been granted. It embodied the hypothesis of the plaintiff's first prayer, and excluded all fraudulent conduct on the part of the master and crew. This was conceding more than the defendant had a right to ask, for the policy expressly assumed the risks of "barratry of the master and mariners, and all other perils, losses and misfortunes, whereby the said vessel, or any part thereof, shall be lost." The object of the prayer was to prevent the jury from speculating as to whether the master and crew might not have pursued, after the bursting of the feed-cock, a more judicious course than stranding the vessel. But, with the *addendum* of the modification by the Court, the plaintiff's were bound to satisfy the jury, that not only was there no fraud, but no negligence on the part of the master or crew. The plaintiffs might well have complained of the

instruction as given by the Court; but the defendant, clearly, has no just cause for doing so. *Busk vs. The Royal Exchange Ins. Co.*, 2 *Barn. & Ald.*, 82. *Walker vs. Maitland*, 5 *Barn. & Ald.*, 171. *Bishop vs. Pentland*, 7 *Barn. & Cres.*, 219. *The Patapsco Ins. Co. vs. Coulter*, 3 *Peters*, 222. *Columbia Ins. Co. vs. Lawrence*, 10 *Peters*, 517. *Waters vs. Merchants' Louisville Ins. Co.*, 11 *Peters*, 220. *Gen. Ins. Co. vs. Sherwood*, 14 *How.*, 366.

3. The defendant's fifth prayer relates to what is called "the steamboat clause," and presents the appellant's theory of its construction and effect. The prayer was properly rejected. It could not have been granted, without declaring, that, by force of this clause, the operation of the rule, "*proxima causa, non remota, spectatur*," was excluded in this case; nor without declaring, that by force of this clause, loss by stranding of the vessel is within the exception; nor without giving to the language of the clause (the insurer's own language) a broader meaning than the words used naturally import, and a more extended operation than the object and the spirit of the exception require. A clause of this kind is, for the first time, now presented to this Court. It has, however, been before the Courts of Pennsylvania, and the decisions have been against the theory of this prayer. *Western Ins. Co. vs. Cropper*, 32 *Penn. State Rep.*, 351.

The sixth prayer of the defendant was framed on the notion, that because the particular voyage, originally insured, was described in the policy as "*via* the Chesapeake and Delaware Canal to Delaware Bay, and from thence by sea to New York," *ex consequenti*, the second voyage must be restricted in like manner, although the voyage described in the memorandum is "from Baltimore to New York," without any restrictive words. The memorandum is not a continuation or renewal of the former insurance, but is a new and independent contract, endorsed on the old policy, (which was *functus officio*, as the voyage therein mentioned had been performed in safety,) instead of being endorsed on

a blank policy. It was a new contract, because for a new voyage and for a different amount, and the "steamboat clause," which was not in the original contract, is here introduced. Where the course of the voyage to be taken by the vessel is intended to be restricted to a prescribed track, it must be so inserted. But where the *terminus a quo*, and the *terminus ad quem*, are merely given, the *iter navis* is left free, except that there must be no deviation from the voyage (*viagium*) insured. Steamers are made to navigate the seas, and an insurance "from Baltimore to New York," covers the perils of the sea, from port to port, unless otherwise expressed. 1 *Arnold on Ins.*, sec. 133, *p.* 336. 1 *Phillips on Ins.*, sec. 192, *p.* 552.

If the underwriters intended to confine the steamer to " the Chesapeake and Delaware Canal to Delaware Bay," as in the former voyage, it ought to have been so expressed in the memorandum. The absence of such restriction is very suggestive of an intention to impose no restriction on the course of the second voyage, except the restriction imposed by commercial usage. Such a memorandum as this is equivalent, in America, to a formal policy, embodying the contract expressed in the memorandum. 1 *Phillips on Ins.*, sec. 13, *p.* 11. 1 *Duer on Marine Ins.*, 107.

The evidence of Mr. Rhodes, however, expressly established that a larger premium was exacted, because of the increased risk of an outside passage. His evidence was clearly admissible to show, if there was any ambiguity, the intended track of the steamer. It does not add to, vary or contradict any part of the memorandum. It cleared a supposed ambiguity. *Vide*, for illustration, *Storer vs. Elliot Fire Ins. Co.*, 45 *Maine Rep.*, 179.

The defendant's seventh prayer related to the second insurance, namely, on freight and cargo. That insurance was by a formal policy, and it described the intended voyage " at and from Baltimore to New York." This prayer assumed the correctness of the defendant's sixth prayer, and, of course, was properly refused if the sixth prayer

was erroneous. Besides this, without any reference in either instrument to the other, it sought to control the construction of the policy on freight and cargo by the supposed meaning of the insurance on the vessel.

BARTOL, J., delivered the opinion of this Court:

This suit was instituted by the appellees upon two policies of insurance effected by them with the appellant, an insurance company of Pennsylvania; one of the policies was upon the body, tackle, apparel and furniture of the steamer "*Dupont*," and the other on her freight and cargo.

The policy on the vessel as originally issued, was delivered on the 7th day of May 1856, and was for $2,000, of a valued policy, and covered a voyage "at and from Baltimore to New York, *via* Chesapeake and Delaware Canal to Delaware Bay, and from thence by sea to New York." That voyage was performed in safety, and the vessel returned to Baltimore.

Subsequently, another voyage being contemplated, the appellant made the contract of insurance upon the steamer, sued on in this case, by an endorsement upon the policy, in these words:

"$27.—Baltimore, June 4th, 1856. It is hereby understood, that this policy shall cover $2,500 on steamer *E. J. Dupont*, from Baltimore to New York, at the rate of one and one-half per cent., subject to steamboat clause, on vessel, valued at $6,000.—$2,500 *a* $1\frac{1}{2}$ per cent., $35.50 premium."

It was proved that the words "subject to steamboat clause," embodied in the endorsement, meant subject to the following clause: "It is understood that the company is not liable for any breakage or derangement of the engine, or bursting of the boiler, or any of the parts thereof, or for the effects of fire from any cause connected with the operation of the repair of an engine or boiler, unless the damage be occasioned, and the repairs rendered necessary, by the stranding or sinking of the vessel after her engine

and boiler shall have been put in successful operation.   It
is also understood, that this company is not liable for fuel,
wages and provisions, nor for any expense of any delay
consequent upon repairs to the engine or boiler of any
kind, or repairs to the vessel, if such repairs are rendered
necessary by breakage or derangement of machinery, or
bursting of boilers."

This clause has been inserted here at length, because
upon its true construction the decision of this appeal mainly
depends.

The policy on freight and cargo was dated the 6th day
of June 1856, "on a voyage at and from Baltimore to New
York."

The steamer proceeded on her voyage, going by what is
usually called the outside course, passing down the Chesa-
peake bay to the Atlantic, and on the 14th of June was
stranded and lost.

At the trial below two prayers were offered by the plain-
tiffs, which were granted with a modification to the second;
and the defendant offered seven prayers, of which the first
four were granted, and the other three were refused, and
the exception was taken to the granting of the plaintiff's
prayers, and to the rejection of the defendant's fifth, sixth
and seventh prayers.

In the argument of the cause in this Court, the appel-
lant's counsel did not insist upon the exception to the
plaintiff's prayers, thus leaving for our consideration only
the ruling of the Superior Court upon the defendant's
prayers.   These present two questions or grounds of de-
fence relied on by the appellant:

1st. That the limitation as to the course of the voyage
contained in the body of the policy of the 7th of May, re-
stricts the contract evidenced by the memorandum or en-
dorsement thereon, and that consequently the voyage pur-
sued was a deviation from that covered by the contract.
This point is raised by the sixth prayer.

At the trial parol evidence was given to the jury, that at

the time the insurance of the 4th of June was effected, the
outside voyage was contemplated, and that an additional
half per cent. premium was added "to cover the outside
risk." This evidence was given without objection, and
without the right to except to it thereafter being reserved.
The point is presented by the sixth prayer, "that the lia-
bility of the defendant as to the voyage underwritten, de-
pends upon the terms of the written contracts, without
reference to any parol evidence as to the meaning thereof,
or the meaning or intentions of the parties in entering into
the same." Certainly no rule of law is better settled than
that here insisted on by the appellant. But if it were a
controlling question in the case, there would be some diffi-
culty under the established practice in this State, in with-
drawing such testimony from the consideration of the jury;
after it has been admitted without objection made when
offered, or within a reasonable time thereafter. But we are
relieved from the necessity of deciding that question in this
case, because according to our construction of the written
contract, there was no deviation from the voyage covered
by the memorandum of insurance. Where the course of
the voyage to be taken by the vessel is intended to be re-
stricted to a prescribed track, it must be so inserted. This
was not done in this instance. By the words of the mem-
orandum, the voyage covered by the contract is described
simply as "*from Baltimore to New York,*" without any re-
strictive words; it is clear that in such case the *iter navis,*
the course of the voyage, is left free.

By the terms of the policy made on the 7th of May, the
particular voyage thereby insured, was described as "*via*
the Chesapeake and Delaware Canal to Delaware Bay, and
from thence by sea to New York." But the policy made
on the 4th of June is a new and distinct contract, covering
another and different voyage. The effect of endorsing it
upon the former policy and referring thereto, was to make
the new contract subject to the terms and stipulations con-
tained in the policy, except in so far as they varied by the

terms of the endorsement. And we think it very clear, that the endorsement differs from the original policy in this essential particular. It describes merely the *terminus a quo*, and the *terminus ad quem*, without any restrictive words prescribing the course of the voyage, or any reference to the restrictions in that respect imposed by the former contract.

In our opinion, therefore, there was no error in refusing the sixth and seventh prayers.

2nd. We now proceed to examine the second ground of defence, involving the construction and effect of the *"steam boat clause,"* incorporated in the contract of the 4th of June. This is presented by the fifth prayer, which asked the Court to say that under that clause the defendants were not liable under the policy upon the vessel, if the jury should find *"that any breakage or derangement of the machinery of said steamer, or any part thereof, created a necessity for her being run ashore, and that she was, because of such necessity, run ashore and lost."*

This is the first time the appellate Court of this State has been called on to construe this clause in a policy of insurance, and after giving the subject our most careful consideration, we are of opinion that the construction put upon this part of the contract, by the Court below, was correct, and that the fifth prayer was properly refused.

The appellants claim that under this clause they are exempt from liability for the loss of the vessel, if that loss can be traced back to the breakage of the machinery as its first cause, even though the immediate or proximate cause of the loss was the stranding of the vessel. To adopt this construction would, we think, as has been argued by the appellees, "be giving to the language of the clause a broader meaning than the words used naturally import."

It was conceded in the argument that the loss occurred from perils clearly covered by the general terms of the policy, and the effort is, to exempt the underwriters from liability by force of the exceptions contained in the "steam boat

clause." It must appear that the case presented by the prayer is within the terms and meaning of the exception, fairly and rationally construed according to its language, taking the whole clause together.

On this subject we have been referred to a recent decision by the Supreme Court of Pennsylvania, in the case of *The Western Insurance Company vs. Cropper*, 32 *Pen. Rep.*, 351, in which the same clause, in a policy of insurance, came before that Court for examination.

We refer to the very clear and satisfactory opinion of the Court in that case, delivered by Judge Strong, as containing a brief but complete argument showing the grounds upon which the Court based its construction of the clause in question. We are thus saved the necessity of discussing the question at length, preferring to adopt the conclusion arrived at by that learned Court, as entirely consonant with our own judgment, and which we consider is fully supported by the reasons stated in Judge Strong's opinion.

*Judgment affirmed.*

(Decided April 15th, 1864.)