ADOLPHUS C. SCHAEFER, JR., *vs.* THE BALTIMORE
MARINE INSURANCE COMPANY.

*Exclusion of testimony Admitted subject to Exceptions—Construction of a Contract of Insurance.*

Where, under an agreement of counsel, parol testimony explanatory of a written contract, is admitted, subject to exceptions, a party may ask the exclusion of all the parol evidence, as well that offered by himself as that offered by the opposite party.

S entered into a contract of insurance with the Baltimore Marine Insurance Company. The policy excluded all shipments unless approved and endorsed on the policy—the valuation to be fixed by the endorsement. By the course of dealing between S and the Company, applications for insurance were indicated by endorsing the names of the articles to be insured in a policy-book attached to the policy; and afterwards, generally on the same or ensuing day, the valuation was extended on invoices furnished by S, on application of the Company. A loss having occurred, it was discovered that one item was simply endorsed in the policy-book, and that its value had not been extended, no invoice having been furnished. On suit by S for the value of this article, HELD:

1st. That this was a valued and not an open policy, and the applicant for insurance having failed to furnish the invoice, as was his duty, was not entitled to recover.

2d. That under this running but valued policy, each and every shipment, for the insurance of which application is made, becomes a distinct insurance to be determined by the provisions of the policy and the endorsements in the policy-book.

3d. That the contract of insurance was not complete, as to any specific shipment, until the endorsement of the value; and it was too late to ask for such endorsement when the shipment was in all probability lost.

APPEAL from the Court of Common Pleas.

This action was instituted to recover the value of certain bacon, shipped on board the Steamer Kingfisher, and totally lost on a voyage from Baltimore to Charleston, and which the appellant claimed was covered by a policy of insurance issued by the appellee. The policy was a running policy and contained the following stipulations: "no shipments to be

considered as insured until approved and endorsed on this policy by this company, endorsements valued at the same, provided they do not vary from the cost more than — *per cent.*;" * * * and "beginning the adventure upon the said goods and merchandizes from and immediately following the loading thereof on board of the said vessel at as aforesaid, &c." On the 8th of November, 1866, application was made to the company to endorse on the policy, soap and other goods per Steamer Kingfisher. This was accordingly done by the entry of "soap, &c., in boxes," in the policy-book, attached to the policy. On the next day application was made to endorse the bacon on the policy, and the proper officer of the company made the endorsement as applied for, but instead of writing the word "bacon" by itself on a separate line, wrote it after and on the same line with the words "soap in boxes, &c.," already endorsed; so that the whole endorsement read "soap, &c., in boxes, and bacon invoice," and was valued at $510, the premium at one *per cent.* being $5.10. The course of dealing between the appellant and the company was that the goods to be insured should be thus endorsed, and that afterwards, on the day of the sailing of the vessel or the day after, or sometimes, though not usually after the lapse of several days, the value of the goods, on an invoice furnished by the appellant, and the amount of premium should be carried out and added to the endorsement.

The Kingfisher having been lost, the appellant brought suit for the value of the bacon.

*Exception:* The plaintiff prayed the following instruction:

If the jury find that the policy offered in evidence, was duly executed by the defendant on the day of its date, and that on or about November 8th, 1866, the plaintiff shipped on the steamer Kingfisher, from Baltimore to Charleston three hogsheads of bacon, of the invoice value shown by the invoice of said bacon offered in evidence, and that the plaintiff applied to the defendant to insure said bacon and indorse the insurance on said policy, and that the defend-

ant, by its proper officer, did accordingly indorse said insurance, by writing the word bacon on said policy, after the words "soap, &c., in boxes," so that said endorsement then read as follows: "Nov. 8th, steamer Kingfisher, from Baltimore to Charleston, soap, &c., in boxes, and bacon, invoice and 10 per cent., 1" in the columns, and under the headings appearing in the book, which was offered in evidence, and which was part of said policy; and shall further find, that afterwards the invoice value of the articles embraced under the words "soap, &c., in boxes," was communicated by the clerk of the plaintiff to the defendant, and was endorsed on said policy by the figures 510 in said book; and that said clerk who attended to said insurance for the plaintiff, by accident and inadvertence, and without the knowledge of the plaintiff, and without any fraudulent design on the part of the said plaintiff, or his clerk, omitted to furnish the defendant with the invoice value of said bacon, on or immediately after the sailing of the Kingfisher; and that after the said vessel was over-due, but before any information of her loss had been received, the plaintiff looked at said endorsement, and then for the first time discovered that the invoice value of said bacon, with ten per cent. added, had not been entered thereon, or carried out in figures; and that plaintiff immediately sent the invoice of said bacon to the defendant's office, with the request that said value might be extended in said endorsement, and the defendant refused to make said endorsement as requested; and shall further find, that according to the course of business between the plaintiff and defendant under said policy, the invoice value of goods invoiced was frequently extended and endorsed on the said policy after the sailing of the vessel to which the insurance related; and that according to the said course of business, the premiums due from the plaintiff to the defendant, were, from time to time, as the amounts became sufficiently large, settled by the plaintiff's giving notes therefor; and shall also find that the said steamer Kingfisher was wholly lost on said voyage, and that

said bacon was lost with her—then the plaintiff is entitled to recover, although the jury may find that the said vessel was lost at the time when the defendant was requested to endorse the value of said bacon on the policy.

And the defendant offered the following prayers:

1st. That all the evidence in this cause, the tendency of which is to show that the valuation in the endorsement in the policy-book of $510 as offered in evidence, does not include the value of the bacon in said endorsement, shall not be considered by the jury.

2d. If the jury find that the policy offered in evidence was executed by the defendant, and that the defendant endorsed thereon "Nov. 8, steam. Kingfisher, from Baltimore to Charleston, soap, &c., in boxes, and bacon invoice 10 per ct., amount insured $510, rate 1, prem. 5.10," as offered in evidence, that then, by a proper construction of said policy and endorsement thereon, the defendant is only responsible for the sum of $510, endorsed thereon, as the value of the goods also endorsed; and if the jury find that said sum has been paid, the plaintiff is not entitled to recover under the issues in this case.

The Court rejected the prayer offered by the plaintiff, and granted the prayers offered by the defendant, whereupon, the plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, MAULSBY, GRASON, MILLER and ALVEY, J.

*I. Nevett Steele,* for the appellant.

The first prayer of the appellee excludes all evidence, "the tendency of which is to show that the valuation in the endorsement in the policy-book of $510, as offered in evidence, does not include the value of the 'bacon' in said endorsement." Even if the testimony on this subject, offered by the plaintiff, was excluded, there was still the testimony

of defendant's own witness, which could not properly be ruled out by the Court on the defendant's application.

But the evidence was clearly admissible. Not only has the Court a right in giving a construction to a written paper to be placed in the position as to all the surrounding circumstances, which was occupied by the parties executing the paper, but in this case the entry was on the face of it, one which left and required something to be supplied by proof, and was uncertain as to the subjects to which the different parts of it applied. The rule is familiar that parol evidence is admissible to shew the subjects and parties to which a contract relates. 1 *Parsons on Mar. Ins.,* 128; 2 *Parsons on Mar. Ins.,* 503, 504; 1 *Duer on Insurance,* 169–171, 172; 1 *Arnold on Insurance,* 78; 1 *Greenleaf on Evid.,* secs. 275, 288, 297; *Birch vs. Depyster,* 4 *Camp.,* 385; *Preston vs. Greenwood,* 4 *Doug.,* 28; *Colpoys vs. Colpoys,* 3 *Jacobs' Rep.,* —; *Gray vs. Harper,* 1 *Story,* 574; 2 *Parsons on Contracts,* 557, (*5th edition.*)

Even if the evidence objected to was properly excluded, the second prayer of the appellee should not have been granted. It could only then have been maintained, on the ground that there was no insurance, until the value was extended, and this is not in accordance with the law or the intention of the parties.

The policy attached as soon as the bacon was put on board the steamer. The application was to insure bacon to be shipped per steamer Kingfisher, on the voyage from Baltimore to Charleston. This application was accepted, and the shipment was approved and endorsed on the policy. By the established and admitted course of dealing, the valuation might be entered after the sailing of the vessel. In truth, the valuation was made under the terms of the policy, by simply exhibiting the invoice or purchasing price of the goods, and adding ten per cent. There could not validly be any higher valuation. The premium was not to be paid for a month or perhaps for a longer period, and the amount of

it was of course readily ascertained by applying the current rate of premium to the amount of the valuation.

The ascertainment of the value and premium was to be made after the policy had attached and become operative, and in that matter each party had a right to rely upon and require good faith on the part of the other. To this extent, the policy was an open policy, to be converted into a valued policy by entering, afterwards the value and the premium; and it was not in the power of either party to invalidate the policy, by refusing, after the goods had been shipped, to make or to have made the proper entry. If this be not so, then in all cases, where the company was not called upon to extend the value, until one day or longer, after the sailing of the vessel, the shipper had no insurance, and the company might invalidate the policy by refusing to make the entry.

In the absence of fraud on the part of the appellant or his clerk, the company was bound by the policy, and should have made the entry when requested. The cause of the delay is found in the error of the company's officer, who instead of entering the bacon, which was a separate shipment, on a separate line, added it on the same line with the soap, &c. The appellant applied to the company immediately on discovering that the value had not been carried out, and then, though the vessel was out of time, it was not known that she was lost. Even if her loss had been then known, the company was bound, and under the circumstances should have made the entry. 1 *Parsons on Marine Insurance*, 44, 319, 329, 330, *et seq; Harman vs. Kingston*, 3 *Camp.*, 150; *Crawford vs. Hunter*, 8 *Term Rep.*, 15, *note a; Carver vs. Insurance Co.*, 6 *Gray*, 214; *Hartshorn vs. Insurance Co.*, 9 *American Law Register*, 184; *Insurance Company vs. Roberts*, 4 *Duer*, 141; 2 *Parsons on Marine Insurance*, 45, 49.

*William S. Waters*, for the appellee.

By the terms of the policy, "no shipments were considered as insured until approved and endorsed on the policy" by the

defendant. Endorsements were valued at the endorsement, and the consideration of the policy at the rate "as endorsed on the record of the policy." The premium to be fixed at the time of the endorsement. It is also declared in the policy that the goods insured are valued as per endorsement. The essential requisites to complete the policy and make a perfect contract of insurance, are to endorse upon the policy the goods to be shipped, the ship, the voyage, the premium, and the value of the goods. When this is done the contract is complete; until it is done there is no contract. The policy does not give any power to the insured to fill it up. The endorsements are to be made with the consent of both parties; and not until the endorsements are made do the minds of both parties so meet as to form an agreement. Until then the insured is not bound for the premium, nor is the insurer bound for the goods. This construction is borne out by the course of conduct of the parties. Neither considered that the contract was completed until the amount of premium and the value of the goods were extended upon the policy. The seeming diversity of the cases can be reconciled when this distinction is applied to them. *Baptist Church vs. Brooklyn Fire Ins. Co.*, 28 *N. Y.*, 161; *Orient Fire Ins. Co. vs. Wright*, 23 *How.*, 401; *Harman vs. Kingston*, 3 *Camp.*, 150; *Entwisle vs. Ellis*, 2 *H. & N.*, 549; *Langhorn vs. Cologan*, 4 *Taunt.*, 332.

In the inception of the contract the policy was to be a valued policy and not an open policy; and according to its terms was not completed as a contract until its value was extended. 1 *Arnould on Insurance, secs.* 124, 129.

In this case the company could have recovered no other premium than that endorsed upon the policy. And until the assured is bound for the premium there is no contract of insurance. 1 *Arnould on Ins., sec.* 7; 1 *Phil. on Ins., sec.* 439.

Even give a wider scope to the power of the plaintiff to endorse and extend the value on the policy in this case, he has neglected it until the company is no longer bound to

agree to it. The steamer had already been lost, and the certainty existed that she was lost.   *Harman vs. Kingston,* 3 *Camp.,* 151.

The contract offered in evidence by the plaintiff is a completed contract in all its parts. It is therefore not proper to allow it to be varied by parol evidence.   2 *Greenleaf on Ev.,* sec. 377; 1 *Greenleaf on Ev.,* secs. 275–277–281 ; *Marshall vs. Haney,* 4 *Md.,* 498 ; 2 *Arnould on Ins.,* sec. 462 ; *Mumford, vs. Hallett,* 1 *John.,* 433.

•STEWART, J., delivered the opinion of the Court.

The policy in this case, with its accompaniment, the policy-book, constitutes the written contract between the parties.

In the trial below, objection was made by the defendant to the admissibility of certain proposals of insurance made by the plaintiff to the defendant, for the purpose of shewing that the article " bacon," claimed by the plaintiff to have been insured, was not in fact valued, although it so appears in the endorsement in the policy-book ; because the tendency of such parol testimony was to vary the written contract between the parties.

This objection the Court overruled at that stage of the trial.

The parties then agreed that all the evidence, whether conflicting with the written contract or not, should be admitted, subject to exceptions after the testimony was closed.

Evidence was then introduced in relation to the controverted article " bacon," and as to the course of dealing, or manner of transacting the business of insurance between the parties.

When the evidence on both sides was closed, the Court, below, upon the application of the defendant, excluded from the consideration of the jury all the testimony tending to show that the valuation in the policy-book does not include the value of the " bacon " mentioned therein. This ruling occasioned the plaintiff's first exception, and it is urged in his behalf, amongst other reasons, that this was error, because the

defendant itself had offered parol testimony which was excluded.

By the agreement all the evidence was admitted, subject to exceptions. Both parties, under the agreement, having offered parol testimony, the defendant might ask to have it all excluded if really inadmissible, without being estoped under the circumstances from excluding that offered by itself.

But it is not material whether the parol testimony was excluded or not, so far as the plaintiff is concerned. If the case is determined by the written contract, the policy and the policy-book, the plaintiff can only recover according to the provisions of the policy, and that expressly excludes all shipments, unless approved and endorsed on the policy, and the valuation to be fixed by the endorsement.

If the parol testimony is admitted explanatory of the circumstances connected with the entry of the article of " bacon," and that it was not, in fact, valued in the endorsement made in the policy-book, and shewing the course of dealing between the parties, whilst it proved that the " bacon " was not in fact estimated in the value of the articles carried out, it shows at the same time that if it had not been included with the other articles, " the soap in boxes, &c.," but had been written on a line to itself in the policy-book, it would not have had its value extended and endorsed in due time, because of the omission of the plaintiff to furnish the invoice of prices and values.

According to the tenor of the policy, and the custom of dealing between the parties, the policy was designed not to be an open but a valued policy upon all articles insured, and though a running and continuing policy, leaving every specific shipment itself, to constitute a distinct subject of insurance.

When the value of the interest at risk is not fixed in the policy by agreement between the parties, but is estimated by a certain standard to be made out in case of loss, it is an open policy. 1 *Arnould on Insurance, p.* 324, *sec.* 130.

Under the open policy the prime cost must be proved. In a valued policy it is agreed. The effect of the valuation is to

settle conclusively the prime cost.   *Lewis vs. Ricker*, 2 *Burrows*, 1196.

This running but valued policy, as other policies, constitutes the contract between the parties, and must be construed by the same rules as govern in the construction of other contracts, purely to accomplish the purposes, and carry into effect the meaning and intention of the parties.

Being designed as a valued policy, it was not complete as to any specific shipment until the endorsement of the value; and it was, certainly, too late to ask for such endorsement when the shipment was in all probability lost.   The contract of insurance requires the purest good faith and fairness on both sides.

Indemnity is designed on the one side for possible loss, for which the insured must pay a reasonable price for the risk, and this is the premium for that risk incurred by the other, and which forms the consideration inducing the insurance— a *quid pro quo*.

But where the loss is known to have occurred, there is no foundation for the contract of insurance.   Under such circumstances there is no hazard requiring to be guarded against.

Under this running but valued policy each and every shipment, for the insurance of which application is made, when endorsed, becomes a distinct insurance, to be determined by the provisions of the policy and the endorsements in the policy-book.

The proposal is made on the one side, and accepted on the other.

The policy does not attach upon the mere application of the party desiring insurance upon a particular shipment, but it must be assented to by the other before the contract is perfected.

According to the course of dealing between these parties when the application was made, the insurance was not considered consummated, but when the invoice was furnished, and the valuation endorsed in the policy-book, nothing further remained to constitute the contract complete.

The party might make the application simply, and afterwards decline to complete the insurance, but the application being made and the valuation furnished, and both endorsed and extended in the policy-book, there was a subsisting contract, and the running policy became a *valued* one, *quoad hoc.*

It appears to have been the custom of the company, when application had been made for insurance, but no valuation endorsed, leaving the insurance on the subject matter inchoate and incomplete, to send down to have the invoice brought up, and the appropriate entry made in the policy-book; and which seems to have been done in this instance, but the plaintiff denies or has no recollection of this matter.

The *onus* of furnishing the invoice was on the plaintiff; the affirmative testimony of the company, when contrasted with the negative on the other side, according to the rules of evidence is entitled to the preponderance.

But however the fact may have been, it was certainly the duty of the insured if he desired, in good faith, to consummate the insurance to perfect the contract, by furnishing in proper time the evidence of the valuation, and the *laches* is on his part.

There seems to have been a disposition on both sides to act with entire fairness, and the difficulty has grown out of inadvertence and human infirmity. No doubt, the plaintiff intended to have the "bacon" insured, but his mere application, without further evidence as to the quantity and value, to be furnished by him to the company, did not cause the policy to attach, and could not, *per se,* constitute a binding and mutual contract between the parties under this policy, to charge the company with the loss of the bacon.

The information as to the value ought to have been furnished in reasonable time.

The neglect to do so until such a time had elapsed as to render the loss of the vessel with its contents highly probable, does not authorize the plaintiff to ask to have the valuation endorsed.

If it could, after such an interval, be endorsed, it might as well be demanded after the loss was known and the risk determined.

If it could be done, in either case, then the endorsement of the valuation was a useless ceremony, and the simple endorsement of the application for insurance would be sufficient to constitute a contract between the parties.

We think such a construction is not warranted by the written contract between the parties, evidenced by the policy and policy-book, nor by the course of dealing between them, nor by any just principle of indemnity under contracts of insurance.

The plaintiff's prayer was properly refused, as it contained an erroneous view of the law applicable to the case.

Whether the defendant's first prayer was entirely correct or not it is unnecessary to decide, because we do not perceive that its sanction by the Court below has at all injured the plaintiff; and the same remark is applicable to its second prayer.   See *Donville vs. Sun Mutual Ins. Co.*, 12 *Lawrence*, 259; *Edwards et. al. vs. St. Louis Ins. Co.*, 7 *Missouri*, 382.

*Judgment affirmed.*