ALEXANDER T. LEFTWICH, SURVIVING PARTNER OF RICARDS, LEFTWICH & Co., *vs.* ROYAL INSURANCE COMPANY OF LIVERPOOL.

*Fire Insurance—Question as to Whether Certain Property was Intended to be Covered by a Policy—Evidence—What is Prior Insurance—Waiver of Preliminary Proof of Loss.*

The question whether a policy of fire insurance was or was not designed, when it was obtained, to cover certain property subsequently destroyed by fire and covered by other policies as well, is a question of fact, and in determining it the admissions of the assured as to his purpose in obtaining the policy are competent evidence.

In May, 1898, thirty-six hogsheads of tobacco, situated in the warehouse of the Baltimore Steam Packet Company, and belonging to the plaintiff, were destroyed by fire. This tobacco had been shipped from North Carolina to the plaintiff in Baltimore, and was designed for immediate further shipment by rail to Tacoma, and thence by steamer to Kobe, Japan. At the time of the loss plaintiff held two policies of fire insurance, (1) a policy of $1,000 issued in March, 1898, by the defendant company "on tobacco and tobacco stems * * contained in the warehouse of the Baltimore Steam Packet Company;" (2) a policy in the N. A. Insurance Company on 100 hogsheads of tobacco (including the 36 destroyed) from N. C. to Tacoma and thence by steamer to Kobe. This latter insurance was effected by making an entry, according to the course of dealing between the parties, in the policy-book of the plaintiff with the company under an open policy of marine insurance, which when originally made in 1880, covered shipments from ports in Virginia to Baltimore and to New York. This policy contained the American clause providing that in the case of prior insurance the company should be answerable only for so much as such prior insurance may be deficient towards fully covering the property insured. After the fire, the entire amount of the loss was paid by the N. A. Company to the plaintiff, but when this company discovered the existence of the policy made by defendant it claimed that it was liable only for a proportionate part of the loss. Plaintiff thereupon returned the

O

amount so claimed to have been overpaid to that company and brought this action against defendant. The defenses were that the tobacco destroyed was not insured under defendant's policy; that the loss had been fully paid and that the plaintiff had failed to furnish the required preliminary proof of loss. Defendant had not insisted upon the proof of loss required by its policy but had denied its liability upon the ground that its policy did not cover this loss. *Held,*

1st. That evidence of plaintiff's admissions made shortly after the fire that when he obtained the policy in the defendant company it was not his intention to insure the tobacco destroyed, is admissible; and if it be found as a fact from all the evidence in the case that the defendant's policy was not designed to cover this tobacco, then defendant is not liable in this action, but it was error to rule as matter of law that the tobacco in question was not covered by defendant's policy.

2nd. That the defendant's policy was prior insurance to that in the N. A. Company, the entry in the policy-book of the latter company constituting a new contract subject to the terms of the original policy of 1880.

3rd. That if the defendant based its refusal to pay plaintiff's claim for the loss upon other grounds than plaintiff's failure to furnish the proof of loss required by the policy, then such preliminary proofs are waived.

Appeal from the Superior Court of Baltimore City (STOCKBRIDGE, J.) The following prayers were offered at the trial:

*Plaintiff's 1st Prayer,* asked the Court " to declare as the law of this case that if the Court, sitting as a jury, shall find from the evidence that subsequent to the expiration of the policy of the Insurance Company of North America, dated October 22, 1879, offered in evidence, a course of dealing grew up between the said Insurance Company of North American and the plaintiffs, Ricards, Leftwich & Co., according to which it was understood and agreed between them that when the plaintiff desired insurance upon tobacco which they had purchased and were expected to have shipped, they would notify the said insurance company of the fact, request the company to insure said tobacco, whereupon the company, if it accepted the risk, would signify its assent and make a written memorandum of the same, setting forth the goods insured, the voyage, and the

fact that the insurance was made under the said policy of October 22nd, 1879, which policy was thereby intended to be restored to force and effect in so far as its terms and provisions were consistent with the new insurance thus effected in each case.

And if the Court, sitting as a jury, shall further find that on or about the 12th day of May, 1898, the plaintiffs in pursuance of said course of dealing, gave notice that he expected one hundred hogsheads of tobacco to be shipped from points in North Carolina to Baltimore, thence to Tacoma, and thence by sea to Kobe, Japan; that the said insurance company accepted said offer and agreed to insure said tobacco for said voyage and journey upon the terms usual between it and the plaintiff's firm and made the memorandum thereof, offered in evidence by the witness (Milligan), then such contract of insurance consisting of the oral agreement coupled with the policy of October 22nd, 1879, in so far as the latter was consistent therewith constituted a new contract of insurance as of the date of said oral agreement, according to the true and proper construction of said new contract of insurance thus constituted, the Insurance Company of North America was answerable for only such amount of the loss upon the tobacco covered by the said new contract of insurance, and by the policy of the Royal Insurance Company mentioned in the declaration in this case, dated the 28th day of March, 1898, *if it was so covered by said policy*, as such last-mentioned insurance may be deficient towards fully covering the said tobacco thus insured, the said policy of the Royal Insurance Company being prior insurance within the meaning of the said new contract of insurance of the Insurance Company of North America. (Granted with modification as above.)

*Plaintiff's 2nd Prayer.*—The plaintiff prays the Court to declare as the law of this case, that if the Court, sitting as a jury, shall find that the property, for the loss of which this suit is brought, was insured against loss by fire at the place of loss by the defendant, The Royal Insurance Com-

pany, by a policy dated March 28th, 1898; and that the
said property was further insured by the Insurance Com-
pany of North America by an order placed by the plaintiff
with the said Insurance Company of North America on or
about May 9th, 1898, which order was for insurance upon
the said property from places in North Carolina to Balti-
more; thence to Tacoma, and thence by steamship to Kobe,
Japan; and that such insurance so effected with the Insur-
ance Company of North America was agreed and under-
stood to be based on and to embody the terms and condi-
tions of a written policy of insurance issued by the said
Insurance Company of North America to the plaintiff,
dated October 22nd, 1879, and offered in evidence in this
case, then, according to the said insurance in the Insurance
Company of North America upon the goods and property
lost, and according to all the terms and conditions of and
embodied in such insurance, the said Insurance Company
of North America was liable to the plaintiffs only for so
much of the amount of the loss as the insurance in the
Royal Insurance Company of Liverpool, the defendant,
may be deficient towards fully covering the premises in-
sured by both companies.   (Rejected.)

*Plaintiff's 3rd Prayer.*—The plaintiff prays the Court to
declare as the law of this case, that although the Court,
sitting as a jury, may find from the evidence that the con-
tract or policy of insurance sued on contains, as one of the
terms of said contract or policy of insurance, the following
clause:

" If fire occur the insured shall give immediate notice of
any loss thereby in writing to this company, protect the
property from further damage, forthwith separate the dam-
aged and undamaged personal property, put it in the best
possible order, make a complete inventory of the same,
stating the quantity and cost of each article and the
amount claimed thereon, and within sixty days after the
fire, unless such time is extended in writing by this com-
pany, shall render a statement to this company signed and

sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property, and a copy of all the descriptions and schedules in all policies, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the fire, and shall furnish, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged, and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured), living nearest the place of fire, stating that he has examined the circumstances and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify."

And the Court, sitting as a jury, may further find from the evidence, that the plaintiff neglected and failed to file with the defendant company such statement of loss, plans, specifications, certificates, or any other of the documents or things required to be furnished in the clause or condition of the policy above quoted, within sixty days after the fire and loss averred in the declaration in this case, yet if the Court, sitting as a jury, shall further find that before the expiration of such sixty days' time the plaintiff made claim upon the defendant for payment of the amount of insurance alleged to be due on the policy of insurance held by the plaintiff in the defendant company, and that the defendant company, through its officers or agents, refuse payment of such amount on grounds other than failure of the plaintiff to comply with the provisions of the clause of the policy above set forth, then, under all the terms, stipulations and conditions of the said policy of insurance, the

plaintiff was no longer bound to comply with the said clause of the policy of insurance, and is not precluded from enforcement of any of his rights under such policy of insurance by reason of such non-compliance with the provisions of the said clause.    (Granted.)

*Plaintiff's 4th Prayer.*—If the Court, sitting as a jury, shall find the facts set forth in the plaintiff's first, second and third prayers, and shall further find from the evidence that the Insurance Company of North America paid over to Ricards, Leftwich & Co. the whole amount of its policy, to wit, the sum of forty-five hundred dollars, in ignorance of the fact of the existence of the policy of the Royal Insurance Company, sued upon in this case, then the said Insurance Company of North America had a right to demand of the plaintiff's firm the return of eight hundred and eighteen dollars of the amount so paid in error, the title to that sum never passed to the plaintiff, but the plaintiff held the same for the use and benefit of the said Insurance Company of North America, and the plaintiff is entitled to recover the amount in this case, with interest, in the Court's discretion, the execution of the policy sued upon in this case being admitted.    (Rejected.)

*Defendant's 6th Prayer* prays the Court to rule as a matter of law, that there is no evidence in the cause sufficient to show a valid waiver by the defendant of the filing of preliminary proofs of loss within sixty days after the fire, as required by the policy in suit, and inasmuch as the proofs offered in evidence were not filed until more than eight months after said fire, the verdict must be for the defendant.    (Rejected.)

*Defendant's 7th Prayer* prays the Court to rule as a matter of law, that if it finds there has been no waiver by the defendant of the filing of preliminary proofs of loss within sixty days after the fire, as required by the policy in suit, and that the proofs offered in evidence were not filed until more than sixty days after the said fire, the verdict must be for the defendant.    (Granted.)

*Defendant's 8th Prayer.*—The Court rules as a matter of law, that if it finds that the total loss to the tobacco mentioned in evidence was paid to the plaintiff by the Insurance Company of North America with knowledge of the existence of the policy on which this suit was brought or that it might by reasonable inquiry have learned thereof before such payment, then the plaintiff may not ·recover. (Rejected.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William L. Marbury* and *Carroll T. Bond,* for the appellant.

I. The rulings of the Court below in admitting extrinsic evidence of the intention of the parties, as to covering the goods lost by the Royal policy, and in granting the defendant's fifth prayer that as a matter of law the policy did not cover the goods lost, and modifying the plaintiff's first prayer, and refusing the plaintiff's second and fourth prayers accordingly, were erroneous.

1. Where the terms of the contract are plain, precise and unambiguous, extrinsic evidence is not admissible to vary or control those terms. "The policy itself, in the absence of fraud, duress or mistake must be looked to to ascertain the meaning and intent of the parties, and where the contract is clear, precise and unambiguous in its terms, and the sense is manifest and leads to nothing absurd, there is no need to resort to rules of construction, and extrinsic evidence is inadmissible to vary or control its terms." 1 *Joyce on Insurance,* sec. 205. And this general rule has been applied in the following cases : *Baltimore Fire Ins. Co.* v. *Loney,* 20 Md. 20; *Citizens' Ins, Co.* v. *Doll,* 35 Md. 107; *Snowden* v. *Guion,* 101 N. Y. 462; *White* v. *Ashton,* 51 N. Y. 280; *Holmes* v. *Ins. Co.,* 10 Met. 211; *N. A. Ins. Co.* v. *Throop,* 22 Mich. 146; *Dewees* v. *Manhattan Co.,* 35 N. J. L. 366; *Burnham* v. *Boston Ins. Co.,* 139 Mass. 399;

*Carver's Carriage of Goods by Sea,* sec. 164; 1 *Joyce on Ins.,* sec. 185.

2. The description of the property covered in this policy is clear, precise and unambiguous, and accurately describes the goods lost, and therefore extrinsic evidence is neither necessary nor proper to ascertain an intention such as will vary or restrict its clear meaning.

3. And even if the action of the Court below in going outside of and beyond the description of the property in the policy to ascertain the intention of the parties were proper, the testimony in the case as a whole affords no ground for ruling that as a matter of law the policy does not cover the goods lost.

II. The requirement of the Royal policy as to furnishing preliminary proofs of loss within sixty days after loss cannot be insisted upon by the defendant, it having refused payment upon other grounds before the expiration of that time. If, within the time limit, the defendant (the insurer) shall deny liability exclusively for other reasons, he cannot require the further performance by the insured of the conditions of the policy prerequisite to payment of loss. *Franklin Co.* v. *Coates,* 14 Md. 294; *Penn. Ins. Co.* v. *Dougherty,* 102 Pa. St. 568; *Fisher* v. *Crescent Co.,* 33 Fed. Rep. 544; *Boyd* v. *Cedar Rapids Co.,* 70 Iowa, 325.

III. The plaintiff is not precluded from recovering in this suit by the fact of the payment for the entire amount of loss made to plaintiff by the Insurance Company of North America.

1. The Insurance Company of North America was liable under the "American Clause" in its policy for only such part of the loss as the insurance in the defendant company might be deficient towards fully covering the property insured. Because by the terms of its real contract the insurance in the Insurance Company of North America was subsequent in date to that in the Royal Company.

2. The amount paid by the Insurance Company of North America in excess of its liability, equal to the liability of

the Royal Company, was paid under a mistake of fact and was properly due and recoverable from the plaintiff, and plaintiff was still without indemnity for that much of his loss.

3. Plaintiff's right to recover is not affected by failure to return the excess payment to the Insurance Company of North America until after the filing of this suit.

The Court below having erred in granting the defendant's fifth prayer, in modifying the plaintiff's first prayer, and refusing the plaintiff's second and fourth prayers, and in the rulings upon the testimony, the judgment entered in this case should be reversed by this Court and the case remanded for a new trial.

*George Whitelock* (with whom was *Edward I. Koontz* on the brief), for the appellee.

It is contended that the judgment should be affirmed, upon the issues of identity and waiver which were raised by the pleadings and are presented by the prayers granted to the appellant and the appellee.

The admission made by Mr. Leftwich was competent evidence in support of the allegation of the appellee's third plea, that the goods and merchandise insured by its policy were not injured or destroyed by the fire. In fact, this admission made after the loss has probative force sufficient to remove any doubt that the policy was not intended to cover losses which were embraced within the open policy of the Insurance Company of North America. *Planters' Mut. Ins. Co.* v. *Engle,* 52 Md. 480; *Opinion of Stockbridge, J.,* in this case, Daily Record, March 14th, 1900; *Newson* v. *Douglas,* 7 H. & J., 451; *Augusta Ins. Co.* v. *Abbott,* 12 M. 373. If this evidence standing alone was not admissible upon the question of identity of the risk covered, it was certainly admissible upon that issue in connection with the other evidence in the record; and it would, at all events, have been admissible as it was directly pertinent to the question of waiver. The contention in behalf of the

correctness of the Court's ruling upon the evidence contained in the second bill of exceptions applies with equal force to the third and fourth bills of exceptions. *Edwards* v. *Balt. F. I. Co.*, 3 Gill, 187; *Cit. Nat. F. I. Co.* v. *Doll*, 35 M. 102. The appellant admitted that it was not his intention when he took out the Royal policy, to cover the tobacco under that policy, but, if there had been no other insurance on the tobacco, he would "have claimed from the Royal and they would probably have paid it."

The testimony of Deming, which constitutes the matter objected to and is made the subject of the fourth exception, was corroborative of the testimony of Howie, and it established the fact that, in taking out the insurance policy in suit, and in paying the premium thereon, it was not the purpose of the contracting parties to cover any tobacco save such "odds and ends" as might not be covered by the policy of the Insurance Company of North America.

The exception containing the prayers presents two questions: 1, the identity of the subject-matter (appellant's second prayer and appellee's fifth prayer); and 2, the preliminary proof and waiver (appellant's third prayer and the appellee's seventh prayer.) So far as this controversy is concerned, the appellant could have recovered, if at all, solely upon the merits of its claim against the appellee, and not upon any conjectural weakness of its claim against an insurer who paid the whole loss without murmur or complaint, and which in the absence of fraud, or if it knew or had the opportunity to know, could not have compelled repayment. *Mut. Life* v. *Wager*, 27 Barb. 367; *Fire Ins. Co.* v. *M. & M. Co.*, 66 Md. 351; *Hanover F. Ins. Co.* v. *Brown*, 77 Md. 73. It is entirely immaterial whether or not the marine policy and the policy-book of the appellant formed its contract (*Schaefer* v. *Balto. Ins. Co.*, 33 Md. 116.)

It is likewise immaterial whether the marine policy was, in accordance with its terms, insurance "prior in day of date" to that of the appellee, as was decided in *Deming* v. *Merchants' Cotton Compress Company*, (90 Tenn. 340), and

in *Corporation of London Assurance Company* v. *Patterson*, (106 Ga. 548–555); which cases are clearly distinguishable from and recognize the doctrine laid down in *Commonwealth Ins. Co.* v. *Cropper*, 21 Md. 318, in the *Schaefer case, ante*, and in the *Orient Mutual Ins. Co.* v. *Wright*, (23 How. 401); which latter cases do not touch upon the proposition accepted and applied in the former cases, that the date of the policy, and not of the risk, determines the question of priority.   Indeed, if the rights of the Insurance Company of North America were involved at all in this controversy, it is respectfully submitted, that under the law, as declared in the *Whiting case*, 15 Md. 297, and stated in *Joyce on Insurance*, (secs. 1418, 2496–8), that company would be liable for the whole risk, because its policy exhausted the "aliment," and left nothing upon which the appellee's policy could "feed."

The appellant's second prayer is bad, because it erroneously, although, under the circumstances, very naturally, bases the liability of the appellee upon the liability of the Insurance Company of North America.   This prayer is also obnoxious to the objection that it ignores the evidence in the record, and excludes every inference therefrom, as to whether or not the parties to the contract of fire insurance in suit intended that it should cover the thirty-six hogsheads of tobacco that were burned.   It is furthermore submitted, that even if the prayer had not excluded relevant and sufficient evidence, and had not been otherwise bad, it would still scarcely constitute ground for reversal, because its terms were fully embraced within the first prayer.

For the foregoing reasons, it is insisted that the appellant's fourth prayer is plainly defective in substance.   Under the theory of the appellant's first and second prayers, the fourth prayer is open to the criticism that it asks the Court to assume inconsistent hypotheses as to the facts. This prayer, in addition to these and other vices, which go to its substance, is fatally defective in form.   The appellee's fifth prayer, which was granted in connection with the ap-

pellant's first prayer, and the appellee's seventh prayer, which was granted in connection with the appellant's third prayer, present no serious ground for controversy in view of the evidence in the case.

BRISCOE, J., delivered the opinion of the Court.

This is a suit brought in the Superior Court of Baltimore City by Alexander T. Leftwich, surviving partner of Ricards, Leftwich & Company, of Baltimore City, against the Royal Insurance Company of Liverpool, a corporation doing business in the State of Maryland, upon a policy of fire insurance to recover for the loss of thirty-six hogsheads of tobacco, while stored in the warehouse of the Baltimore Steam Packet Company, at the foot of Union Dock, Baltimore. The tobacco was received at the warehouse on or about the 13th of May, 1898, and remained in storage until the 17th day of same month, when the warehouse and tobacco were entirely destroyed by fire. The tobacco had been shipped and consigned to the appellants from North Carolina, under three bills of lading, and was intended for shipment to Kobe, Japan.

The declaration states that on or about the 28th day of March, 1898, the Royal Insurance Company of Liverpool, for good and lawful consideration, executed a policy of insurance in favor of the plaintiffs covenanting and agreeing to insure and indemnify the plaintiffs up to an amount not exceeding $1,000, against all direct loss or damage by fire to goods and merchandise while contained in the said warehouse of the Baltimore Steam Packet Company, or on a wharf, street, or pavement during process of storage or delivery, subject to certain exceptions and conditions in said policy expressed, and subject to an abatement in case of other insurance upon the same property in the proportion which the amount of its policy bears to the whole amount of insurance on said property; that the said property was insured in an additional amount of four thousand five hundred dollars ($4,500) in the Insurance Company of North America.

The provisions of this policy (New York Standard form) relating to the property destroyed by fire are in these words : " Royal Insurance Company of Liverpool in consideration of the stipulations herein named and of fourteen and 3-100 dollars premium, does insure Messrs. Ricards, Leftwich & Company for the term of time from the 28th day of March, 1898, at noon, to the 28th day of October, 1898, at noon, against all direct loss or damage by fire, except as hereinafter provided. To an amount not exceeding one thousand · dollars, to the following described property while located and contained as described herein, and not elsewhere, to wit : On tobacco and tobacco stems and packages for and containing the same, their own or held by them in trust or on consignment or sold but not removed, contained in the frame warehouse of the Baltimore Steam Packet Company, situate foot of Union dock, Baltimore, Md. To cover also on wharf, street or pavement, during process of storage or delivery. Other insurance permitted without notice until required."

By the terms of the policy the proofs of loss were required to be furnished the company within sixty days after the fire. And there was a further stipulation that the company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for ; and the loss shall not become payable until after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.

The appellants also held open marine insurance in the Insurance Company of North America, dated the 9th of May, 1898, to cover about 100 hogsheads of tobacco, including the 36 hogsheads destroyed by fire, to be shipped from North Carolina to Kobe, Japan.

There was no policy issued to cover this tobacco, but, according to a course of dealing between the appellant and

the company, the tobacco was insured upon the same terms as those contained in a policy of marine insurance previously issued by the company to the appellants.   The original policy was dated October 22nd, 1879, and was to cover shipments of tobacco on board of " vessels and steamers at and from Richmond and Norfolk, Virginia, and other ports and places to Baltimore."   The policy was not to continue in force longer than one year, unless by agreement, but by a subsequent endorsement on this policy on the 1st of July, 1880, it was extended to cover shipments to New York, as well as Baltimore.

It also contained what is known as the " American Clause," providing that if the said assured shall have made any other assurance upon the premises aforesaid, prior in date to this policy, then this insurance company shall be answerable only for so much of the amount as such prior insurance may be sufficient towards fully covering the premises hereby insured, without any deduction for the insolvency of all or any of the underwriters, and shall return the premium upon so much of the sum by them insured as they shall be by such prior insurance exonerated from. And in case of any insurance upon the said premises, sub-sequent in date to this policy, this insurance company shall nevertheless be answerable for the full extent of the sum by them subscribed hereto, without right to claim contribu-tion from such subsequent assurers, and shall accordingly be entitled to retain the premium by them received, and in the same manner as if no such subsequent assurance had been made.

On the 4th of June, 1898, the full amount of the loss, $4,500, was paid by the Insurance Company of North America to the appellants, but subsequently the sum of $818.18 was repaid, and this suit is brought to recover from the defendant below, the amount alleged to be due under its policy.

At the trial there were five exceptions reserved ; four of these relate to the admissibility of evidence and the fifth

presents the rulings of the Court upon the appellant's first, second and fourth prayers, and the appellee's fifth and seventh prayers.

As all the questions necessary to the determination of this case are presented by these exceptions, we will pass on them as they arise. The first exception was abandoned at the hearing and will not be considered. The second, third and fourth exceptions will be considered together, as they practically present the same question, and that is, briefly stated, whether certain admissions made by the appellant Leftwich after the fire, to Mr. Howie, a general adjuster of insurance, were admissible evidence tending to show that the tobacco destroyed by fire was not covered by the contract of insurance, with the Royal Insurance Company.

The evidence objected to and contained in these exceptions is as follows: "That in his (Mr. Howie's) interview with Mr. Leftwich, Mr. Leftwich had said it was not his intention when he took out the Royal policy to cover under that policy, but if there had been no other insurance on the tobacco he would have claimed from the Royal and they would probably have paid it."

This evidence, we think, was admissible upon the question of identity of the risk covered by the policy. *Citizens' Fire Insurance Co.* v. *Doll*, 35 Md. 107; *Railroad Company* v. *Trimble*, 10 Wall. 367; *Fogg* v. *Mutual Insurance Co.*, 10 Cush. 337. The language of the policy issued by the appellee, is that it is upon *tobacco* and *tobacco stems* and *packages*, and one of the questions for the Court, sitting as a jury, was to determine whether the tobacco destroyed by the fire was covered by this policy. The declaration of the plaintiff himself, made after the fire, that he did not intend to insure this tobacco in defendant's company was admissible evidence, in connection with the other facts of the case, to be submitted, under instructions from the Court. In *Augusta Insurance Co.* v. *Abbott*, 12 Md. 373, it is distinctly said, whether the policy in question *was* or *was not designed*, when *obtained*

to cover the particular cargo of the appellee was a proper question for the jury to determine from the evidence. And in *Farmers' Mutual Insurance Co.* v. *Engle*, 52 Md. 479, it is said: " So, looking to the face of the policy and the nature of the business in which the plaintiffs were engaged, it is doubtful, to say the least, whether they intended to insure goods held by them on commission, and for the loss of which they were not responsible. But the doubt, if any there be, is entirely removed by the letter written by the plaintiffs to the insurance company after the loss, in which, after stating that the owners of the fertilizers insist that their fertilizers are covered by the policy, the plaintiffs say ' we do not think so.' Here, then, is written admission by the plaintiffs after the loss, that they did not intend to insure the fertilizers held by them for sale on commission, and now, in the face of this admission, they ask a Court to say, that they did mean to insure such fertilizers."

The remaining questions arise upon rulings of the Court on the prayers. The plaintiff's first prayer raised the question as to whether the contract of insurance between the appellants and the Insurance Company of North America, dated as of the entry in the pass-book on the 9th of May, 1898, or the acceptance of the risk must be considered, as of the date of the original policy issued in October, 1879. This question, we think, is determined by the fact that by the original policy the voyage insured was stated to be between North Carolina and New York, whereas, the entry in the book on May, 1898, was made to cover points from North Carolina to Baltimore, thence to Tacoma, and thence to Kobe, Japan, another and different voyage. The acceptance of the risk by the entry of May, 1898, made a new and distinct contract, but subject to the terms and stipulations contained in the original policy. We find no error in the ruling of the Court upon this prayer. *Commonwealth Ins. Co.* v. *Cropper*, 21 Md. 318; *Schaefer* v. *Marine Insurance Co.*, 33 Md. 109.

The plaintiff's second prayer was properly rejected ; the

law on this branch of the case was fully covered by the plaintiff's first prayer. There was no error in the rejection of the plaintiff's fourth prayer ; it was defective in omitting facts proper to be included in it. It was bad both in substance and form.

The defendant's fifth prayer is in these words : " The defendant prays the Court to rule as matter of law that the tobacco shipped from North Carolina under the bills of lading offered in evidence and located on the Bay Line wharf in Baltimore, Maryland, at the time of the fire of May 17th, 1898, is not covered by the policy in suit and no loss thereto by said fire can be recovered in this action." This prayer was clearly erroneous, because the question whether or not the policy in suit covered the property destroyed by fire on the 17th of May, 1898, was a question of fact under all the evidence to be found by the Court sitting as a jury, and not a matter of law, as stated by the prayer. While the rule is, as stated by this Court in *Roberts & Co.* v. *Bonaparte*, 73 Md. 199, that the construction of all written documents is a question of law for the Court, and when a contract is sought to be made out from such documents alone, it is for the Court to ascertain and determine its construction. But when, as in this case, the evidence does not depend entirely upon a written contract, but upon other facts, it is a question for the jury and not for the Court.

The seventh prayer of the defendant related to the question of waiver, and was granted in connection with the plaintiff's third prayer. It correctly stated the law upon this subject, as announced by this Court in the case of *McElroy* v. *Hancock Life Ins. Co.*, 88 Md. 148. It ruled as a matter of law that if the Court found there had been no waiver by the defendant of the filing of preliminary proofs of loss within sixty days after the fire as required by the policy in suit, and that the proofs offered in evidence were not filed until more than sixty days after the fire, the verdict must be for the defendant.

For the error in granting the defendant's fifth prayer the judgment will be reversed and a new trial awarded.

*Judgment reversed and a new trial awarded with costs.*

(Decided June 16th, 1900.)