[PHILADELPHIA, JANUARY 21ST, 1839.]

## FLEMMING *against* The MARINE INSURANCE COMPANY.

1. To render an insurer of goods liable for damage done to them in the course of a voyage, it is necessary that some evidence should be given of such extraordinary disaster or injury in the course of the voyage, as would occasion damage in a seaworthy vessel.

2. Where a policy is for account of whom it may concern, although no express evidence is given on the trial that the person making the insurance had any authority from the owner of the goods to enter into the contract, yet the jury may presume an adoption and ratification of it by such owner, if it be for his benefit.

3. Although a judge may be wrong in his charge to the jury, even in stating to them that there was no evidence upon a particular point, when in fact there was some evidence, yet if the jury find against the charge, a new trial will be granted.

THIS was an action of covenant brought by Joseph Flemming against The Marine Insurance Company of Philadelphia, on a policy of insurance, dated the 16th day of January, 1827, whereby the defendants insured the sum of $5000, on goods laden or to be laden on board the brig Seneca, on a voyage from New York to the Havanna.

The defendants pleaded *non infregerunt conventionem*, and upon this issue the cause came on for trial before KENNEDY, J., at a Court of Nisi Prius held in Philadelphia, on the 6th of November, 1838.

The plaintiff having proved the execution of the policy, which was in the usual form, for Joseph Flemming " or whom it may concern," gave in evidence a bill of lading of certain goods, dated the 15th of January, 1827, shipped by Joseph Flemming, and consigned to B. Mitjans, at Havanna, and an invoice of the same signed by Flemming. Evidence was then given to show that one John Marcia, for whose benefit the insurance was alleged to have been made, and for whose use the suit was said to be brought, was actually the owner of the goods. This and other testimony given on the trial relating to the ownership of the goods, and the circumstances of the voyage, are sufficiently stated in the charge of the learned judge, which was substantially as follows.

" This action was instituted in the name of Joseph Flemming, and at his request, for the benefit, as alleged, of John Marcia. It is founded upon a contract, usually denominated a policy of insurance; and, as is alleged, was made originally for the benefit of John

Marcia. It is therefore necessary that you should be satisfied in the first place, that Joseph Flemming, who procured the policy, intended it for the benefit of John Marcia; that Marcia either authorised him to have the insurance made, or adopted and approved of it after it was made; and that Marcia was the owner of the goods insured at the time of the insurance. In regard to this last matter, that of Marcia being the owner of the goods, it would seem, if you believe the evidence, that he became the owner of them by purchase, on the 22d, 23d, and 24th days of February, 1826, nearly eleven months before the date of the insurance. There is no evidence that he afterwards sold or parted with them; and Mr. Mitjans, who appears to have been the consignee of the goods at the Havanna, to which place they were insured from New York, testifies that he received them as the goods or property of John Marcia. It is true, that no evidence has been given on the part of the plaintiff, showing where the goods were during the eleven months, from the time of the purchase by Marcia, until they were shipped on board of the brig Seneca, but still, if you accredit the evidence, showing Marcia to have been the owner of the goods, the want of evidence showing where the goods were during that period, would not be sufficient, I would think, to warrant the conclusion that Marcia had ceased to be the owner of them. Then as to the question was the insurance effected by Flemming for Marcia, and so intended at the time. If it was so, the evidence, perhaps, is not so full and satisfactory to this point as could have been asked for, and might have been expected. But still as I am not prepared to say that there is no evidence whatever given to you tending to prove this fact, it is proper that I should submit it as a question of fact to your determination. No particular request or special authority from Marcia to Flemming to have the insurance made has been proved. Nor has it ever been proved, unless I have misapprehended the testimony of Mr. Pearce, that Flemming was either a general or special agent of Marcia, and employed by the latter to do business for him. Nor has it been shown that Flemming, when he procured the insurance to be subscribed, disclosed the name of Marcia, or declared it to be on his account. Had any of those things been proved, it would have aided the little evidence that has been given on this head very much. So, if it be true, that Joseph Flemming, as is alleged by the plaintiff's counsel, had no interest in the policy, or the suit founded upon it here, he might have been called as a witness, or his testimony have been obtained on behalf of the plaintiff, whereby it would have appeared, whether he caused the insurance to be made for Marcia or not; and under what authority he procured it. But it is said, that the defendants, seeing they knew that Flemming was here lately, might have procured his evidence. The defendants however allege, that Flemming had some interest in this case, and at all events he is the plaintiff on record, and that they are not willing to

(Flemming v. Marine Ins. Co.)

trust him, and take his account of the matter, which they would have been bound to do, had they called him, without being able to prove clearly the fact, otherwise than as he would have stated it. Under this view and belief, on the part of the defendants, it would, perhaps, not have been very wise or prudent in them to have made Mr. Flemming their witness.   But it is obvious that if Flemming got the goods insured for the benefit of Marcia, the latter had not the slightest reason to distrust Flemming's being willing to prove it; and hence it is much more reasonable that the plaintiff, Marcia, should have made Flemming a witness, than that the defendants should have done so.   If it be true that Flemming was employed by Marcia to transact business for him, it may seem strange that they should never have corresponded by letters in regard to it: if they did, and such letters are in being, they might have been produced to show the agency of Flemming, and the authority he had to do business for Marcia.   It is said, however, that the absence of both Marcia and Flemming from the country, has not only prevented this, but likewise precluded the counsel for the plaintiff from knowing or ascertaining whether such letters ever existed, and if so, whether they are still in being.   This, however, cannot be very well received as a satisfactory excuse on behalf of the plaintiff.   If a plaintiff, after commencing his suit, will quit the country, or living out of it at the time he brings it, will not attend to it by advising his counsel of what he can prove, and furnish the proper proof therefor, he cannot expect, and has no right to claim, that presumptions shall be made in his favour to supply the want of such proof. Having thus noticed what might have been expected, and at least adduced in point as evidence showing for whom the policy was intended to be effected, but has not been, I will now call your attention to the only evidence adduced and relied on by the plaintiff, tending to show this fact.   First, it is said the form of the policy shows that it was intended to be effected for the owner of the goods, whoever he might be; and it being shown by the evidence, that Marcia was the owner of them, it is contended, that it is but fair to infer therefrom that he was the person for whom it was intended; and more especially so, as Flemming, when he employed Mr. Binney to bring this suit, declared Marcia to be the owner of the goods, and the person for whose use the suit was to be instituted. Had it been further shown by the evidence that Flemming had acted as agent for Marcia, and been recognised by the latter as such in his commercial concerns, the inference would have been pretty strong, that the policy here was effected for him; but in the absence of all evidence of the kind, and no authority or request having been shown from Marcia to Flemming to do it, it is certainly not so cogent as it would have been with such additional aid.   But if you should be satisfied in your minds, from the evidence given, of the truth of the fact, that Flemming intended the policy for Marcia,

(Flemming *v.* Marine Ins. Co.)

though the latter gave no previous authority to make it, but subsequently adopted and accepted it, this, I apprehend, would be sufficient to entitle Marcia to the benefit of the policy, and to recover in this action, provided he has shown a loss on the goods occasioned by any of the perils insured against by the policy. Because, it is a maxim of the law, that a subsequent approval and adoption of the act by the party for whose benefit it has been done, supplies the want of previous authority to do it. And although there is no direct evidence here from Marcia himself going to show that he adopted or approved of the policy in question, which ought to appear in some way, yet if it appear to be for his benefit to do so, it may be presumed.

The next question which arises is, has the plaintiff proved any damage to have been done or occasioned to the goods insured while on the voyage, by any of those extraordinary perils or occurrences against which it was the design of the policy to protect him? Without he has made proof to this effect, he has no right to claim your verdict, and cannot recover. It is not sufficient that the goods should appear to have been in a damaged state when they were landed, to entitle the plaintiff to recover in this action, but it ought to appear that that damaged state was occasioned by some extraordinary disaster, which occured on the voyage; such as a violent storm or hurricane, the effects of which neither human foresight nor efforts could well guard against or prevent. Now what is the evidence on this subject? Admitting that the bill of lading here is, as contended by the plaintiff's counsel, evidence that the goods were in good order when received on board the Seneca, still at most it is only *prima facie* evidence, and of a very slight character; and we are to consider that it is not usual or customary for the captain of a vessel, upon receipting for the goods, to examine them when put up in close packages; neither indeed would it be convenient, perhaps not practicable, to do so; at most he can only see whether the boxes or packages, in which the goods are contained, are in good order, and as to this the bill of lading may properly be regarded as strong evidence. But as to the goods themselves being in good order, so far as the bill of lading can be considered evidence of it, slight circumstances will be sufficient to rebut it, and render it necesary for the plaintiff to produce other and stronger evidence that the goods were in good order, when shipped. If it should appear, as in this case, that the goods, shortly before they were sold to the person claiming the benefit of the insurance, were imported by sea from a foreign country, without having been actually opened and inspected here, before they were reshipped, it would go far, if not completely to rebut such *prima facie* evidence, arising merely from the bill of lading. It is true, that you have the positive evidence of the persons who sold the goods in question to Marcia, stating that the goods were in good

order, when so sold, which was nearly eleven months before they were shipped on board the Seneca; but how they knew this, whether by opening the packages containing the goods, and thus inspecting them, does not appear. If they had stated that this was done, it would perhaps have been more satisfactory to you. Their belief on this subject may have been founded on the practice, which Mr. Wilson, a witness on behalf of the plaintiff, speaks of in his evidence as having been adopted in the house of which he was a member, to wit, that generally one or two packages of the whole parcel of goods imported only were opened and examined, to see whether they were in good order. But it is obvious that this test is not sufficient to show clearly the real condition of the goods in each package; for in this case the goods in some of the packages reached the Havanna in good order, according to the admission of the plaintiff, while the goods in question, but in other packages, stowed away in the same part of the vessel, as testified to by the witnesses, or at least by the captain, are alleged and claimed by the plaintiff to have been damaged. Had the goods been shipped by Marcia on board the Seneca immediately after his purchase of them, the testimony of those of whom he bought them, would be entitled to more weight in showing that the goods were in good order when shipped, but the lapse of time afterwards, nearly eleven months, without any proof having been adduced, showing where those goods were and how they had been kept during that period, weakens the tendency somewhat which otherwise it would have to satisfy you that the goods were in a sound state when shipped. But this, as it is said, is met by the testimony of the witnesses, examined on behalf of the plaintiff at the Havanna, under a commission taken out for that purpose, who have testified that the packages containing the goods in question were wet outside and in, by salt-water or water of the sea, as they believed. If the only damage done to these goods, arose from salt-water or water of the sea, which was not dried up or absorbed at the time of unlading the boxes containing them, it would certainly be fair to infer thence that the damage was of recent date, and that it might possibly have accrued during the voyage. But then the question recurs, does this tend to prove that this damage was occasioned by any extraordinary peril of the sea or disaster happening in the course of the voyage, such as human sagacity or effort could not well guard against or prevent, when no direct evidence has been given of such disaster, and yet the captain and crew of the vessel, together with the vessel itself, arrived at the destined port in perfect safety. Such damage to the goods as has been shown, might possibly tend to show that the vessel was not seaworthy, that is, tight, staunch and strong; but the defendants cannot be made liable under the policy for such damage; for this, the plaintiff must look to the owners of the vessel. Every policy, unless otherwise expressed, is subscribed by the underwriters upon an

(Flemming *v.* Marine Ins. Co.)

implied warranty; if none be expressed, that the vessel on board of which the goods are shipped, or intended to be shipped, is or shall be seaworthy; and if she be not so, the underwriters cannot be made liable for loss or damage of the goods under the policy.   The only evidence given here to you of what occurred on and during the voyage, is contained in the protest given in evidence by the plaintiff, and the deposition of captain Lively on the part of the defendants.   This deposition so far from proving any disaster to have happened during the voyage, that would render the defendants liable, clearly and substantially negatives the fact.   I am also of opinion that nothing of the kind is proved by the protest; and that, under all the circumstances given in evidence, you cannot presume or infer that such peril or extraordinary disaster took place during the voyage as would render the defendants liable to make good or to repair the damage which may have been done to the goods.   In short there is no evidence going to show that the vessel was strained in any way by the violence of the weather, or that she ever took in water more than was common in ordinary cases.

I am, therefore, of opinion that the plaintiff has not made out his case; and is not entitled to recover."

The jury found for the plaintiff, and the defendants moved for a new trial, and assigned the following reasons.

" 1. The verdict is directly against the charge of the judge in point of law; the judge having charged the jury that every policy unless otherwise expressed, is subscribed by the underwriters upon an implied warranty, if none be expressed, that the vessel on board of which the goods are shipped, or intended to be shipped, is or shall be seaworthy ; and if she be not so, the underwriters cannot be made liable for loss or damage of the goods under the policy : that the only evidence of what occurred on and during the voyage was contained in the protest given in evidence by the plaintiff and the deposition of Captain Lively, on the part of the defendants : that the deposition, so far from proving any disasters to have happened during the voyage, that would render the defendants liable, negatives the fact.   That the judge was of opinion that nothing of the kind was proved by the protest, and that under all the circumstances given in evidence, the jury could not presume or infer that such peril or extraordinary disaster took place during the voyage as would render the defendants liable to make good or to repair the damage which may have been done to the goods.   In short, that there was no evidence going to show that the vessel was strained in any way by the violence of the weather, or that she ever took in water more than was common in ordinary cases; and he, therefore, gave his opinion that the plaintiff had not made out his case, and was not entitled to recover.—Yet the verdict was for the plaintiff.

(Flemming v. Marine Ins. Co.)

2nd. That no evidence whatever was given that Joseph Flemming (by whom the insurance was effected,) was in any way whatever authorised to make insurance by John Marcia, in whom the interest in the goods insured was alleged by the declaration to be, and for whom recovery was claimed. Yet the judge charged the jury that if they should be satisfied of the truth of the fact that Flemming intended the policy for Marcia, though the latter gave no previous authority to make it, but subsequently adopted and accepted it, this would be sufficient to entitle Marcia to the benefit of the policy, and to recover in the action, provided he has shown a loss on the goods, occasioned by any of the perils insured against by the policy ; because it is a principle of law, that a subsequent approval and adoption of the act by the party for whose benefit it has been done, supplies the want of previous authority to do it. And that although there was no direct evidence from Marcia himself, going to show that he adopted or approved of the policy in question, which ought to appear in some way, yet if it appears to be for his benefit to do so, it may be presumed.—And the jury accordingly found a verdict for the plaintiff.

3rd. That there was no evidence whatever of damage or loss sustained by the property alleged during the continuance of the risk.

4th. That the judge refused to admit evidence of another order for insurance given to a different office on the same day, and for insuring goods in the same vessel, for any other purpose except to prove the manner in which Joseph Flemming effected insurances.

5th. That the verdict was directly against the law, against the whole weight of the evidence, and against the express charge of the Court."

Mr. *J. R. Ingersoll*, for the defendants, argued—

1. That the verdict was against law and the evidence; inasmuch as there was no proof of any disaster on the voyage that could account for the damage to the goods ; and that it followed, either that the vessel was unseaworthy, or that the damage happened after the goods were landed. He cited upon this point *Prescot* v. *The Union Ins. Co.* (1 *Wharton's Rep.* 399.)

2. That there was no evidence of the insurance having been made for Marcia, or of his having ratified the contract supposing such subsequent ratification to be sufficient.

3. That there was no evidence of actual damage to the goods.

4. That the judge ought to have admitted evidence of another order for insurance, given by Flemming, for the purpose of showing an attempted fraud.

Mr. *Scott* and Mr. *Randall, contra,* cited 1 *Phillips on Insurance,*

245; *Smith's Mercantile Law,* 214; *Hughes on Insurance,* ch. 9; *Croft* v. *Marshal,* (7 *Carr. & Payne,* 597; S. C. 32 *Eng. Com. Law Reports,* 648.) *Brown* v. *Caldwell,* (10 *Serg. & Rawle,* 117.) *Collins* v. *Rush,* (7 *Serg. & Rawle,* 147.) *Prevost* v. *Nichols,* (4 *Yeates,* 479.)

The opinion of the Court was delivered by

KENNEDY, J.—The principles laid down in the charge to the jury and the directions given to them on the trial of this cause at Nisi Prius, are considered by the Court in bank correct, excepting that part, wherein the jury were advised, that there was no evidence whatever, given to them, tending to prove that the goods were injured by the perils of the sea insured against. The Court are inclined to think that there was evidence of this tendency, though very slight; yet still however slight it might be, the weight and the effect of it, were to be referred to the jury, and to be judged of exclusively by them, and not by the Court or the judge trying the cause. The consideration of the weight and effect of it, was there-fore, by the direction of the Court, improperly withdrawn from the jury. The evidence here alluded to, is contained in the protest, admitted in evidence by consent of the parties, and the depositions of the witnesses, taken under commissions at the city of Havanna. From this evidence it is conceived, the jury might have found that the damage alleged to have been sustained, was occasioned by the perils of the sea on the voyage; and though such conclusion could not have been drawn consistently with the evidence of Captain Levely, the master of the vessel, yet the credit and effect of his testimony was also matter exclusively for the decision of the jury. They how-ever, would seem from their verdict, either not to have understood the charge in relation to the want of evidence as to this point or to have disregarded it altogether, most likely the latter. If so, they were clearly wrong, because they were to receive the law from the Court; and the Court having advised them in respect to the want of evidence as a question of law, they were bound by their respective oaths or affirmations to have given a verdict according to law and the evidence; an obligation which they could only fulfil by giving a verdict in conformity to the charge of the Court, from whom it was their duty to take the law when given. If the rule that the jury shall receive the law from the Court, be not strictly adhered to, it is utterly hopeless to expect, that the law can be administered alike to all; because jurors, who have never made the law their study, as is almost universally the case with them all, must necessarily be mea-surably *ignorant* of it, and therefore will seldom, if ever, decide intricate causes of their heads according to it. The rules of pro-perty, as also those of civil conduct, would be misapprehended and disregarded, so that uncertainty and injustice would prevail through-

(Flemming v. Marine Ins. Co.)

out the state, instead of the law, which is certain and fixed, and without a faithful observance of which equal justice cannot be administered. Courts, being composed of those, who, from many years' study and practice of the law, are therefore supposed to be intimately acquainted with it, have it assigned to them, as their peculiar province, to determine what the law is, in relation to all cases coming before them, and to instruct juries therein, so far as may be requisite to enable the latter to carry the law faithfully into effect, in the discharge of their duties: on the other hand, jurors, from their daily intercourse with mankind, in all the various transactions of human life, which give rise to litigation, are considered peculiarly well qualified to decide on all matters of fact, according to the evidence as it shall be given to them, under the rules of law, or in other words, under the direction of the Court, which is to be considered as being in conformity to the law. Thus Courts and juries have their respective spheres assigned to them, within which, each is to act and move without encroaching upon the jurisdiction or province of the other. In order then, that jurors as well as others may know that the direction and decision of the Court, on any question of law arising in the course of the trial of an issue of fact, is not to be disregarded; and that a verdict given against such direction, whatever it may be, can never avail anything, unless it be to occasion additional delay, trouble and expense to the parties, as also to the public, the course of the Court is to set the verdict aside, and to order a new trial. And a Court, from whose decisions on questions of law, no appeal lies, by writ of error or otherwise, ought never to depart from this course, otherwise the party against whom the verdict is given, loses the benefit of such appeal, and of having the question decided by the appellate Court; which would be a most unjust and illegal deprivation of his right.

There is, however, an additional reason, in this case, for doing so. The circumstances disclosed by the evidence on the trial were such, at least, as to excite strong suspicion, that the claim of the plaintiff was unfair, if not tainted with actual fraud. The conviction, however, which rested on my mind, when charging the jury, that there was no evidence given, which went or tended in the slightest degree to prove a loss or injury to the goods of the plaintiff, occasioned by such perils of the sea, in the course of the voyage, as were insured against by the defendants, rendered it unnecessary for me, as otherwise I would have done, to present the case under that aspect to the jury. For this reason alone, I am strongly inclined to believe, that it would be doing nothing more than justice between the parties to afford them an opportunity of having the case reviewed by another jury under a direction from the Court that shall cover every view which the jury ought to take of it.—The rule for a new trial is therefore made absolute.

Rule absolute.