(Decided 16th July, 1879.)

---

The Planters' Mutual Insurance Company of Washington County *vs.* Peter and Charles C. Engle, trading as Peter Engle & Son.

*Action on Policy of Fire insurance—Construction of the Policy as affected by the Intention of the parties concerning what was to be Insured, and whether it covered goods Consigned to be sold on Commission—Question of fact for the Jury— What constitutes Ownership—Waiver of proofs of Loss— Whether the word "Guano" in the policy embraced other Fertilizers—Admissibility of declarations of an Officer of the Company in regard to his Construction of the Policy.*

Planters' Mut. Ins. Co. of Washington Co. *vs.* Engle & Son.

An application for insurance, which was made part of the policy issued upon said application, stated that the applicants proposed to insure "our property which we describe as follows: No. 1 three thousand dollars on *stock in trade*, consisting of grain, *guano* and salt in forwarding house." The applicants bought and sold grain, guano and salt on their own account, they also sold fertilizers on commission. Certain fertilizers delivered to them for sale on commission, having been damaged by fire, the insured wrote a letter to the Insurance Company after the loss, in which, after stating that the owners of the fertilizers insisted that their fertilizers were covered by the policy, they say "*we do not think so.*" In an action upon the policy to recover for said loss, it was HELD:

1st. That looking to the face of the policy and the nature of the business in which the plaintiffs were engaged, it was doubtful, to say the least, whether they intended to insure goods held by them on commission and for the loss of which they were not responsible; but the doubt, if any, was entirely removed by said letter.

2nd. That if the intention did not exist when the policy was issued, it could not subsequently be imported into the contract.

3rd. That the policy embraced only such stock in trade as belonged to the plaintiffs, and did not therefore embrace fertilizers consigned to them for sale on commission.

4th. That whether the fertilizer belonged to the plaintiffs, or was held by them for sale on commission, was a question for the jury, to be determined under instructions by the Court.

5th. That if it was bought by the plaintiffs, or if they had become liable for it to the owners by course of dealing, it would be embraced in the policy.

6th. That the fact that the fertilizer was charged to them when delivered, with the understanding that they were to account for it at the price thus charged when sold, and if not sold it was to remain in their hands subject to the order of the persons from whom they received it, would not make the plaintiffs the owners of it, but on the contrary, they would under such circumstances still hold it as consignees.

Two agents of the defendant who were sent to inspect and ascertain the nature and extent of the loss, on being told by the plaintiffs that they were not certain whether the fertilizer in question belonged to them, or was held for sale on commission, requested the plaintiffs not to include in the proofs any fertilizers not in fact belonging

to them, and that if this fertilizer proved to be the property of the plaintiffs, the defendant would pay for it.   HELD:

That if this fertilizer was omitted in the proofs of loss in consequence of what was thus said to the plaintiffs, such acts and conduct on the part of the defendant would amount to a waiver of proof of loss in this respect.

At the time the policy was issued, the plaintiffs had fertilizers on hand but did not have any guano, and in the partial settlement of loss, the defendant paid the plaintiffs for all fertilizers which were admitted to be their property, and refused to pay for such as were held on commission.   HELD:

1st. That it was clear that the plaintiffs meant the word "guano" to embrace fertilizers.

2nd. That it might fairly be implied that the defendant also understood the word as used in the policy in the same sense.

3rd. That a letter written by the Treasurer of the defendant to the plaintiffs, being but the written declaration of an officer of the defendant in regard to his construction of the policy, was not admissible in evidence as against the plaintiffs.

4th. That if the proofs of loss were furnished in time, and such proofs were defective, and no objection was made to them by the defendant on that ground, but the refusal to pay was based on other grounds, the defendant would be considered as having waived all objections to the proofs on the ground of such defects, and would not be permitted to rely on them in a suit on the policy.

APPEAL from the Circuit Court for Washington County.

The case is sufficiently stated in the opinion of the Court.

*First Exception.*—The defendant offered in evidence the following letter written by its Treasurer:

HAGERSTOWN, January 17th, 1876.
Messrs. P. Engle & Son,
Gentlemen:—Your account of loss was received the latter part of last week, and I will lay the same before our

Planters' Mut. Ins. Co. of Washington Co. *vs.* Engle & Son.

board at their meeting on Saturday next; I also received your letter of this date as to my opinion as to the liability of our company to your commission merchant in Baltimore. I am decidedly of the opinion that they have no claim on the company. The company did not insure property for any one but your firm. Your application does not ask for insurance on any property that does not belong to you. You will observe, in the heading of your application, that you ask for an insurance on *your* property—not that belonging to a third party. Mr. Smeltzer might as well claim pay for his flour that was placed under your care for shipment; and it is very clear to my mind, that he has no claim whatever.

Yours very truly,

GEO. W. POLE.

The plaintiffs objected, and the Court, (MOTTER and PEARRE, J.,) sustained the objection, and refused to let said letter go to the jury. The defendant excepted.

*Second Exception.*—The evidence being closed, the plaintiffs offered the following prayers:

1. If the jury find the execution of the policy by the defendant, read in evidence, and that the plaintiffs' stock in trade was injured or destroyed by fire on or about the 14th of December, 1875; and that thereafter, and within ten or fifteen days thereafter, the plaintiffs notified the defendants' agent of such loss or injury; and further find that pursuant to such notice the witnesses, Messrs. Pole and Strite, were sent by the defendant to confer with the plaintiffs respecting such loss and injury, or to examine into the extent of such losses, and that they did so confer and examine; and that it was then and there, on the part of the said Pole and Strite, (acting for the defendant,) agreed that the defendant would pay for the loss of certain articles consumed or injured by the fire; and further find that pursuant to such agreement the plaintiffs made out a

list of their losses, and furnished an itemised statement thereof to the defendant; and further find that the defendant took the said statement and examined it, and struck from it only such articles as the defendant did not think was covered by the policy, and agreed to pay for the balance, and did pay for the balance, and that the defendant did not notify the plaintiffs that it (the defendant) was not satisfied with the preliminary proofs of loss, and did not notify the insured of any defect in such preliminary proof, but placed its refusal to .pay for the loss on any goods claimed for as lost by the plaintiffs, upon the ground that such goods were not covered by the policy, then the defendant has waived the conditions in the policy and by-laws in reference to preliminary proofs, and the plaintiffs' claim cannot be defeated on that account.

3. As a substitute for the plaintiffs' third prayer, the Court instructed the jury as follows: That if Pole and Strite, at the time of their visit, were informed by the plaintiffs of the loss of certain fertilizers held by them on commission, and told the plaintiffs that the defendant would not be responsible for such goods, and thereby induced the plaintiffs not to include them in their notice of loss furnished, then the mere omission of them from such statement would not prevent the plaintiffs' recovery for them, if the defendant was informed of such action of said Pole and Strite, and did not notify the plaintiffs in a reasonable time that defendant required preliminary proof of such loss of said articles.

5. If the jury find, in respect to the Whitelock fertilizer, that Whitelock & Co., sent the same to the plaintiffs, and charged them up at a stipulated price therefor, and that the plaintiffs' agreement with the said Whitelock & Co. was, that they should be so charged, and that the plaintiffs might sell at any figure or price above that charged against them, and were to account only with Whitelock & Co. for the amount charged against them for the fer-

tilizers, and not for what they sold them for, then such a contract is not a contract of consignment of goods to be sold on commission, even though the jury may find that so much of the said fertilizers as remain unsold were at the disposal of Whitelock & Co.

7. As a substitute for the plaintiffs' seventh prayer, the Court granted the following:

That if the jury find that at the time of the fire there was in the warehouse of the plaintiffs a certain quantity of Whitelock's fertilizer, and that when Pole and Strite went to the place of the fire, as agents of the defendant, to ascertain the losses, and that while there the said plaintiffs and Pole were engaged in making up a statement of such losses, and while so engaged the plaintiffs told Pole, as agent of the Company, and to be communicated to it, that they did not know, in fact, whether such fertilizers was or was not their property, or whether it was there for sale on commission, and then was told by Pole that the Company would not pay for any loss upon it if it was held on commission, but if held as their own, it would be paid for, and that by reason of this uncertainty, it was not included in the statement of losses then made out; and if they shall find that such fertilizer was, in fact, the property of said plaintiffs, and was not there for sale on commission; and if the defendant, as soon as said Pole returned home, was informed of these facts, and did not notify said plaintiffs to furnish the preliminary proof required by the policy as to the loss of such fertilizer, and made a partial settlement with the insured for such liability as it acknowledged, leaving this loss unpaid, the plaintiffs are not precluded from a recovery for the loss on such fertilizer, nor by reason of their failure to furnish such preliminary proof.

And the defendant offered the following prayers:

1. If the jury believe from the evidence that at the time of the fire the Whitelock fertilizers destroyed therein

were fertilizers held over at the end of the season of 1875, and that they were held subject to the order of the White-locks, then the plaintiffs did not have such property therein as the policy in evidence covered, and the plaintiffs are not entitled to recover for such fertilizers.

2. If the jury find that after the policy offered in evidence was affected by the plaintiffs, to wit, in the fall of 1875 the plaintiffs obtained from Messrs. Whitelock & Co. certain fertilizers, and that a portion of said fertilizers were destroyed by fire on the 14th December, 1875; that said plaintiffs notified the defendant of said fire, and that the witnesses, Pole and Strite, as a committee of the defendant, went to the scene of said fire, communicated with the senior member of the plaintiffs, and told him to make out and forward a statement of loss and damages by said fire; and further find, that during the conversation or conversations then had between the said plaintiffs and the said Pole and Strite, the plaintiffs made no claim or demand for payment for said Whitelock fertilizers so destroyed, and did not, within thirty days after said fire, make any claim or demand for the same, nor furnish to the defendant an account of such loss, signed and verified by oath or affirmation, as required by the seventh condition attached to said policy, then the plaintiffs are not entitled to recover for said fertilizers in this action.

3. If the jury find that at the time the policy of insurance was effected by the plaintiffs, no application was made to the defendants, either in writing or verbally, to include the leather which was destroyed by said fire in said policy; and further find, that after said fire they sent to the defendants the statement of loss offered in evidence, containing an item of leather, and that Mr. Pole, the agent of the defendant, objected to such item and loss as not covered by the policy and application, and that such item was not admitted by the said agent of the defendant, and that another statement was furnished the defendant,

made out by the said Pole upon consultation and with the assent of said plaintiffs, which omitted said item of leather, and that said second statement was presented to and approved by the Board of Directors of the defendant, and the amount of it paid by them to the plaintiffs in full, and that the plaintiffs did not then make, and have not since, at any time before the commencement of the trial of this cause, made any claim and demand upon the defendant for payment for said leather, then the plaintiffs cannot recover for said item.

4. The plaintiffs are not entitled to recover for the fertilizers sued for in this action, because they have not offered evidence that they did within thirty days after said fire, give notice of the loss of said fertilizers to the defendant, and delivery to the Secretary of the defendant a particular account of such loss or damage, signed and verified by oath or affirmation as required by the seventh condition attached to the policy, and there is no sufficient evidence of any waiver by the defendant of the requirements of said condition of the policy with regard to said proofs.

5. And for the same reason the plaintiffs are not entitled to recover for any of the articles sued for in this action.

6. That the plaintiffs, by the acceptance of the policy in this cause, became members of the defendant's Company, and as such were bound by its charter and by-laws, and that by said charter and by-laws Messrs. Pole and Strite had no authority to waive the requirements of the seventh condition of the policy in regard to the preliminary proofs of loss, (unless properly authorized so to do by the defendant,) and, there being no evidence in this cause that they were so authorized, the onus is upon the plaintiffs to prove to the jury that said preliminary proofs of loss were sent to the Secretary of the defendant within thirty days after the fire, and unless they so prove to the

476 MARYLAND REPORTS.

Planters' Mut. Ins. Co. of Washington Co. *vs.* Engle & Son.

satisfaction of the jury, the plaintiffs are not entitled to recover.

7. That the application of the plaintiffs for insurance is part of the policy, and the insurance was only upon such property of the plaintiffs as was specified in the application, and included within its terms; that the term "stock in trade" in the policy is to be construed to mean grain, salt and guano, and if the jury find that the plaintiffs have been paid for the grain, salt and guano, which they lost by said fire, then the plaintiffs are not entitled to recover in this action.

8. If the jury believe from the evidence that the application was prepared by the agent of the Company, according to the directions of Peter Engle, and in good faith, and thereafter Engle & Son signed it, and the policy was issued on this application, and was accepted by Engle & Son, and that after the fire the plaintiffs presented to the Company the first list of losses in evidence, and that thereafter the plaintiffs assented to the striking out of all articles, except grain, salt and guano, or fertilizers, and that the plaintiffs then sent to the Company the second statement of loss, as prepared by Pole and the plaintiffs, and that this amount was paid and receipted for by the plaintiffs, then from these facts, the jury may infer that the stock in trade covered by the policy, was to consist of the articles set forth in the application, and that such was the contract of insurance, and if they do so find and believe that such property has been fully paid for, the plaintiffs are not entitled to recover.

9. If the jury believe from the evidence that after the fire the Company's agents directed the plaintiffs to make out a statement of losses, and to include therein all of the property owned by the plaintiffs, and that the plaintiffs submitted to the Company the statement and amended statement in evidence, and in each list enumerated a quantity of fertilizers, and did not include the Whitelock

fertilizer in either, but that the plaintiffs at that time claimed that these fertilizers did not belong to them, then it was not the intent and meaning of the contract of insurance between the parties to cover such loss, and the plaintiffs are not entitled to recover for it.

The Court granted the plaintiffs' first prayer, and also the fifth, and for the third and seventh prayers of the plaintiffs granted substitutes, and rejected the rest of the plaintiffs' prayers, and all the prayers of the defendant as offered, and in place of the defendant's third prayer, they granted a substitute as follows:

3. The jury are instructed that the plaintiffs are not entitled to recover for anything not embraced in the policy and application, and that leather, bran and bacon are not so embraced.

The Court also gave an instruction to the jury, as follows:

If the jury shall find that the plaintiffs wrote to the defendant that they wanted insurance upon their stock in trade to amount of $3000, and George W. Pole, as agent of the defendant, went down to the place of business of the plaintiffs, and was there informed that the plaintiffs were carrying on a forwarding and commission business, also buying and selling certain goods on their own account, and was told by the plaintiffs that they wanted insurance on their stock in trade, and that said Pole thereupon drew up the application in evidence, which was signed by the plaintiffs, and the defendant was informed of these facts by said Pole on his return, and thereupon the policy in evidence was issued to the plaintiffs, the jury may from these facts find that the policy does cover goods in the warehouse at the time of the fire, held on commission, of the nature and character of those specified in the application, to wit, grain, guano and salt.

The defendant excepted, and the verdict and judgment being rendered against it, appealed.

The cause was argued before BARTOL, C. J., BRENT, MIL-
LER, ROBINSON and IRVING, J.

*Louis E. McComas* and *Henry Kyd Douglas,* for the ap-
pellant.

*Wm. Kealhoffer* and *A. K. Syester,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

This is an action on a policy insuring " *the stock in trade* "
of the appellees against loss by fire.

The main question is, whether certain fertilizers deliv-
ered to the appellee sfor *sale on commission,* are covered by
the policy ?

We understand it to be conceded that a *consignee* of
goods delivered to be sold on commission, has an *insur-
able interest* in such goods.   Thus far the law is well set-
tled.

Whether it is necessary for the *insured* to set forth in
the application or policy the nature and extent of the
interest, for the protection of which the insurance is in-
tended, is a question about which there is some conflict of
opinion.

The Supreme Court, in the *Columbia Ins. Co. vs. Law-
rence,* 2 *Peters,* 25, held that it was, for the reason, among
others, that insurances against fire are made in the confi-
dence that the insured will use all the precautions to avoid
loss which his own interest would suggest, and that the
extent of this interest must always influence the under-
writers in taking or rejecting the risk and estimating the
amount of premium.

These views have been recognized and adopted in several
States.

The current of decisions, however, seem to be the other
way, and to hold that it is sufficient if the *subject-matter*
of the insurance, and the *nature of the risk,* are set forth in

the policy, without stating the *extent* of the interest of the insured in the property, unless so required by the conditions of the policy, or where the failure to state it would operate as a fraud.   *Niblo vs. The North American Ins. Co.,* 1 *Sand.,* 551; *Tyler vs. Ætna Ins. Co.,* 12 *Wend.,* 507; *Locke vs. North American Ins. Co.,* 13 *Mass.,* 61; 1 *Caines,* 276; 1 *Johns.,* 276; *Phillips on Ins.,* 41, 64, 94; 2 *American Leading Cases,* 930.

It is unnecessary, however, to decide this question here, because, conceding that the plaintiffs were not obliged to state the nature and extent of the interest to be insured, we are of opinion that they did not intend to insure the goods held by them for sale on commission.

As a general rule, an insurance on "*the stock in trade*" of a merchant means such goods as he may from time to time buy in the ordinary course of business.

But it is argued that inasmuch as the plaintiffs were forwarding and commission merchants, a policy issued to them on stock in trade must be construed as embracing not only goods bought and sold by them, but also goods delivered for sale on commission.   This may or may not be so, according to the intentions of the parties.

Now in this case, the plaintiffs in their application, which is made part of the policy, propose to insure " our property which we describe as follows:   No 1.  Three thousand dollars on *stock in trade,* consisting of grain, guano and salt in forwarding house."   Here is an application to insure *our property, our* stock in trade, and the record shows they bought and sold grain, guano and salt on their own account, and that they also sold fertilizers on commission. If they had been engaged in carrying on a commission business simply, then it might well be contended that the policy covered goods for sale on commission, because in that event they could have had no other goods on hand constituting " stock in trade," to be protected by the insurance.

So looking to the face of the policy and the nature of the business in which the plaintiffs were engaged, it is

doubtful, to say the least, whether they intended to insure goods held by them on commission, and for the loss of which they were not responsible. But the doubt, if any there be, is entirely removed by the letter written by the plaintiffs to the Insurance Company after the loss, in which, after stating that the owners of the fertilizers insist that their fertilizers are covered by the policy, the plaintiffs say "*we do not think so.*" Here, then, is written admission by the plaintiffs after the loss, that they did not intend to insure the fertilizers held by them for sale on commission, and now, in the face of this admission, they ask a Court to say, that they did mean to insure such fertilizers. It is hardly necessary to say, the plaintiffs could not take out a policy to insure their own property, and then appropriate it to the use of somebody else as an after thought. If the intention did not exist when the policy was issued, it could not subsequently be imported into the contract. *Steele vs. Franklin Insurance Co.,* 5 *Harris,* 290; *Newsom vs. Douglass,* 7 *Harris & Johnson,* 451; *Augusta Ins. Co. vs. Abbott,* 12 *Md.,* 348; *Watson vs. Swann,* 11 *C. B. N. S.,* 755; *Fleming vs. The Marine Ins. Co.,* 4 *Wharton,* 59.

We are of opinion, therefore, that the policy issued in this case, embraces only such stock in trade, as belonged to the appellees, and that it does not, therefore, embrace fertilizers consigned to them for sale on commission.

In regard to " Whitelock's fertilizer," there seemed to be some conflict in the testimony, whether it belonged to the plaintiffs, or was held by them for sale on commission. This was a question for the jury to be determined under instructions by the Court. If it was bought by the plaintiffs, or if they had become liable for it to the owners by course of dealing, it would be embraced by the policy.

We do not think, however, the plaintiffs' fifth prayer states the law accurately on this subject. The fact that the fertilizer was charged to them when delivered, with

the understanding that they were to account for it at the price thus charged if sold, and if not sold, it was to remain in their hands subject to the order of Whitelock & Co., would not make the plaintiffs the owners of the fertilizer. On the contrary they would under such circumstances still hold it as consignees.

As to the proofs of loss, it was necessary of course for the plaintiffs to furnish such proofs within the time prescribed by the policy; or to prove that this condition had been waived by the insurer.

It appears that the Whitelock fertilizer was not embraced in the proofs of loss, but the plaintiffs proved that Messrs. Pole and Strite were sent by the company to inspect and ascertain the nature and extent of the loss; that the plaintiffs told them they were not certain whether the *Whitelock fertilizer* belonged to them, or was held for sale on commission.

That Pole then requested the plaintiffs not to include in the proofs any fertilizers not in fact belonging to them, and that if the Whitelock fertilizer proved to be the property of the plaintiffs the Company would pay for it.

If this fertilizer was omitted in the proofs of loss in consequence of what was thus said to the plaintiffs, such acts and conduct on the part of the Company would, in our opinion, amount to a waiver of proof of loss in this respect.

It was also argued that *guano*, as used in the policy, does not embrace *fertilizer*. Strictly speaking, it may be true that guano does not embrace every kind of fertilizer used for agricultural purposes. But we are dealing with a contract of insurance, and the question is, what did the parties mean by it as used in this connection? The proof shows that at the time the policy was issued the plaintiffs had fertilizers on hand, but did not have any guano, and it

is very clear that they meant it to embrace such fertilizers. And it also appears in the partial settlement of loss the Insurance Company paid the plaintiffs for all fertilizers which were admitted to be their property, and refused to pay for such as were held on commission; and we think it may therefore be fairly implied, that the insurer also understood the word as here used to embrace fertilizers.

The letter written by Pole, the treasurer of the Company, to the plaintiffs, was clearly not admissible in evidence as against the latter. It was but the written declarations of an officer of the Company in regard to his construction of the policy.

The proposition of law embraced in the first prayer is too well settled to admit of discussion. If the proofs of loss were furnished in time, and such proofs were defective, and no objection was made to them by the defendant on that ground, but the refusal to pay was based on other grounds, the insurer will be considered as having waived all objections to the proofs on the ground of such defects, and will not be permitted to rely on them in a suit upon the policy.

It follows also from what we have said, there is no error in the instruction granted by the Court in lieu of the plaintiffs' seventh prayer. The facts set forth in this instruction if found by the jury would amount to a waiver of proof in regard to the Whitelock fertilizer.

Being of opinion that the plaintiffs are not entitled to recover for fertilizers held on commission, the instruction granted as a substitute for the plaintiffs' third prayer has no longer any application to this case.

We find no error in the refusal to grant the several prayers offered by the defendant.

The Court erred, however, in granting the plaintiffs' fifth prayer, and also in the instruction given by the Court.

itself, and for these reasons the judgment will be reversed.

*Judgment reversed, and*
*new trial awarded.*

(Decided 16th July, 1879.)

MILLER, J., dissented.