# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed December 28, 1904.

## DENNIS E. REARDON
### VS.
## WILLIAM R. DAVIS ET AL.

W. *Harry Holmes* for plaintiff.

*Robert Biggs* for Commonwealth Bank.

SHARP, J.—

The bill in this case was filed by Dennis E. Reardon against William R. Davis, Edward V. O'Keefe, Michael J. Byrnes, the Commonwealth Bank and Robert Biggs, trustee.

The bill alleges that on the 9th of May, 1903, Reardon obtained a judgment in the Superior Court against Edward V. O'Keefe for $3,470.76.

That on November 18th, 1898, William R. Davis executed a mortgage to Edward V. O'Keefe of four lots to secure the payment of $1,600 one year after date, which mortgage was assigned by short assignment to the Commonwealth Bank on January 30th, 1899, by O'Keefe.

That on June 30th, 1898, Davis executed another mortgage of four lots of ground to said O'Keefe to secure the repayment of $2,400 in three years after date, which mortgage was assigned by short assignment to the Commonwealth Bank on January 30th, 1899.

That on January 4th, 1898, Davis executed to O'Keefe a mortgage of four other lots to secure an indebtedness of $2,000, payable one year after date, and that this mortgage was assigned by O'Keefe by short assignment to the Commonwealth Bank on January 30, 1899.

That the assignments were not recorded until June 22nd, 1903, more than a month after the plaintiff had recovered his judgment, and more than four years after they were executed.

That it was recited in the mortgages that certain promissory notes for principal and interest were executed; that there never were any such notes; that the mortgages were without consideration.

The plaintiff alleges substantially that all the property described in the mortgages was, at the time of the execution of the mortgages, the property of O'Keefe.

That the deeds of the property were put in the name of Davis for the benefit of O'Keefe, Davis holding the bare naked title; that Davis never had possession of the property, and that all the rents and profits were collected by O'Keefe for his own benefit; that O'Keefe did not lend Davis the sums mentioned in the mortgages; that Davis was not indebted to O'Keefe; that the pretended loan was greatly in excess of the real value of the property.

The plaintiff alleges that the property was put in the name of Davis and the mortgage executed by him instead of O'Keefe so that O'Keefe could control the said property and raise money thereon and receive the benefit therefrom and prevent his creditors from obtaining a lien or claim thereon.

It is further alleged that the Commonwealth Bank was charged with notice of said transaction, because its attorney was also the attorney of Davis and O'Keefe, and fully acquainted with O'Keefe's dealings with Davis.

That on the 4th of June, 1901, Davis executed a deed of the property mentioned in the mortgages, at the request of O'Keefe, to Michael J. Byrnes, which deed was never delivered, and was made without the knowledge of Byrnes, and executed for the purpose of preventing the judgment creditors of Davis from seizing the property, and that proceedings are now pending in the Circuit Court of Baltimore city to set aside this deed.

That the mortgages being in default, the Commonwealth Bank, on June 24th, 1903, obtained a decree to sell the property, and that Mr. Biggs, the

trustee, is to offer said property for sale on July 17th, 1903.

That O'Keefe has no other money or property out of which the plaintiff can recover the debt due him.

The prayer of the bill is that the property mentioned and described in the mortgage may be decreed to be the property of O'Keefe and that Davis may be declared to be trustee; that the judgment claim of the plaintiff may be decreed to be a prior lien over the mortgages assigned to the bank and may be decreed to be liable for the payment of the plaintiff's claim, and that the mortgages from Davis and O'Keefe, and the assignments thereof, may be declared null and void, and the deed from Davis to Byrnes may be declared null and void, and for other and further relief.

Davis, O'Keefe and Byrnes defaulted and a decree *pro confesso* was signed against them on November 21st, 1903. The Commonwealth Bank and the trustee under the decree of foreclosure filed answers, admitting the plaintiff's judgment and admitting the execution and assignment of mortgages, but denying all the substantial charges relating to the dealing between O'Keefe, Davis and Byrnes.

It appears from the evidence that the property referred to in the mortgage of January 4th, 1897, (Exhibit No. 4) had been conveyed to Davis by S. M. Kronheimer and Robert Biggs, receivers, on January 4th, 1897, and was immediately mortgaged by Davis to O'Keefe to secure the repayment of $2,400 in one year after date. The mortgage refers to the deed from the receivers for the description of the property, but this deed is not in evidence. The location of the property and the sum paid to the receivers do not clearly appear from the evidence. It is stated in the answer of the bank that the purchase money paid Messrs. Kronheimer and Biggs was $1,252.50.

The four lots described in the mortgage of June 30th, 1898 (Exhibit No. 3), from Davis to O'Keefe "on Massachusetts avenue back of the car barn" had been sold by Herman D. Hinternesch, trustee at public sale to O'Keefe on the —— day of ———.

After the sale, O'Keefe requested the auctioneer to report the sale to Davis, as he, O'Keefe, was the owner of the ground rent and did not wish a merger

to take place. Immediately after the conveyance to Davis he executed a mortgage to O'Keefe to secure the repayment of $1,600 three years after date. The exact location of the property does not appear, Mr. Hinternesch said he thought the sum paid was $1,600.

The four lots referred to in the mortgage of November 18th, 1898 (Exhibit No. 2), from Davis to O'Keefe had been leased by O'Keefe to Davis, three of the lots by lease dated September 27th, 1897, and one of the lots (being the lot firstly described in the lease) by lease dated March 1st, 1897. The property is not described in the mortgage, and its location and the amount of the ground rent do not appear.

Davis testifies that he had no personal interest whatever in any of these transactions. He held the title for O'Keefe and was governed entirely by his directions, signing such notes, deeds and other documents as O'Keefe requested. Mr. Hinternesch testifies that O'Keefe paid him the purchase money for the four lots on Massachusetts avenue. Davis cannot remember whether he paid Mr. Hinternesch or not, but he says, if he did, it was done with O'Keefe's money and for O'Keefe's benefit.

O'Keefe collected the rents, paid all the expenses on the property and the interest on the mortgages, and was the active party in all the transactions relating to the property.

It is apparent that O'Keefe was the real owner and Davis a mere agent. The purpose of the parties in making this arrangement does not appear, except in the case of the property conveyed by Mr. Hinternesch. In this case, O'Keefe owned the reversion and upon his purchase of the leasehold, desired it conveyed to Davis to prevent a merger.

It is contended that the purpose of O'Keefe and Davis was to hinder, delay and defraud the creditors of O'Keefe, but this has not been proven. It is a common device of a debtor seeking to defraud his creditors to convey or cause to be conveyed property to a confederate to hold on a secret trust for the debtor, but secret trusts may be used for innocent purposes as well, and fraud cannot be inferred from the mere fact of such a conveyance.

It should be observed that this case is not in substance a contest between the creditors of O'Keefe and those of Davis, or anyone claiming under Davis. In such a case the burden of proof might have been shifted after proof of a voluntary conveyance to Davis, or those claiming under such conveyance who would be required to show the bona fides of the transaction, but in this case the controversy is between the creditors of O'Keefe. Both sides claim under him. The bank is a holder for consideration and not a volunteer. The burden of proof of fraud is on the plaintiff, who must show, not only that the conveyances from O'Keefe to Davis were voluntary, but that they were fraudulent. The plaintiff has failed to make out a case of fraud.

It does not appear that O'Keefe was insolvent when the conveyances to Davis were made, or in business difficulties. In fact, the only evidence on this subject points to a different conclusion. Davis says that from 1896 to 1898 O'Keefe was the owner of a large amount of real estate, including ground rents; he was considered a man of large means and good credit.

There was no occasion for him to handle his property to deceive his creditors. "From 1898 on, his condition was pretty good up to the past few years when he was getting in bad shape." See also the testimony of Mr. Biggs and Mr. Hooper. No evidence of the amount of the property owned by O'Keefe is given, or the extent of his liabilities. There is no evidence as to the value of the property referred to in these proceedings. Indeed, the location is not given, except in a very indefinite way, in the case of the lots on Massachusetts avenue, which is described by one of the witnesses "as back of the car barn."

O'Keefe continued in business sometime after this transaction and there is no evidence of any suits against him. Altogether the plaintiff has failed entirely on the issue of fraud.

There is absolutely nothing to indicate the assignment of the mortgages to the bank or the bank's failure for four years to record the assignments was with the intent to, or did, hinder, delay or defraud creditors.

Fraud being out of the case, it is immaterial, so far as the bank is concerned, whether Davis was O'Keefe's agent or not. In either event the bank had a valid lien on the property. There can be no doubt whatever that the bank loaned O'Keefe $2,700 on the security of the property mentioned in the mortgages. O'Keefe was the substantial owner. The form of the transaction is of no importance. Equity regards the substance and not the form, and the bank acquired a valid lien on the property.

Dyson vs. Simon, 48 Md., 214.

The most important question in the case is whether the lien of the judgment is superior to the lien of the bank. The assignment of the mortgage was made in 1899, but was not recorded until June, 1903. In May, 1903, the plaintiff obtained his judgment. There can be no doubt that before the passage of the Act of 1892, Chapter 392, no fraudulent purpose appearing in withholding the assignment of the mortgages from record, the lien of the bank would have been superior.

Dyson vs. Simmons, 48 Md., 207; Stanhope vs. Dodge, 52 Md., 482; Knell vs. Building Association, 34 Md., 67.

Short assignments were first provided for by the Act of 1856, Chapter 154.

Assignments by a formal assignment executed as a deed must be executed, acknowledged and recorded as deeds.

Lester vs. Hardesty, 39 Md., 53.

But short assignments were not required by the Act of 1856 to be recorded.

Lester vs. Hardesty, 29 Md., 53.

The Act of 1868, Chapter 373, required that short assignments should be recorded, but specified no time within which it should be done, nor does the Act contain the provisions for preferences found in the acts regulating the record of deeds and mortgages after the expiration of six months.

The Act of 1868 does not require that equitable assignments should be recorded.

Bayles vs. Tome, 39 Md., 461; Demuth vs. Old Town Bank, 85 Md., 316.

The lien of the assignees of the mortgage notes were even superior to the rights of a subsequent bona fide purchaser for value of the property without notice of the lien. Demuth

vs. Old Town Bank, 85 Md., 315. In this case there had been a formal release of the mortgage by the holder of the second title.

Does the Act of 1892, Chapter 392, alter the case? This statute provides that "the title to all promissory notes and other instruments hereafter made and debts hereafter contracted, secured by mortgage or deed in the nature of a mortgage, shall from and after the maturity of such notes, other instruments or deeds, be conclusively presumed to be vested in the person or persons or body corporate holding the record title to such mortgage or deed in the nature of a mortgage, and if such mortgage or deed in the nature of a mortgage is duly released of record, the promissory note, etc., after maturity shall be presumed to be paid, so far as any lien upon the property conveyed by said mortgage or deed in the nature of a mortgage is concerned."

It is unnecessary to consider whether the true construction of this Act is that the "conclusive presumption" is applicable only to the particular case referred to in the Act, namely, a release of the mortgage, or whether it is also applicable to cases of assignments of mortgages. I assume, for the purpose of this case, it is applicable to assignments.

The Act of 1892, Chapter 392, was intended entirely for the protection of innocent persons dealing with the holder of the legal title. It does not affect the rights of the parties to a transaction like that now in question. As between mortgagor and mortgagee, assignor and assignee (no third person being interested) the "conclusive presumption" does not apply, and the truth may be shown. It will not be conclusively presumed because the bank failed to record the assignments and the record title remained in O'Keefe that O'Keefe has paid the bank or that its lien, whether legal or equitable, has been discharged.

Had there been no assignment of the mortgage O'Keefe would have held the mortgage as trustee for the bank. If O'Keefe had released to Davis or his assignee and the issue was between the bank and Davis or his assignee a different case would have been presented. Between O'Keefe and the bank the rights of the latter are not in any way affected by reason of the

Act of 1892 by the failure to record the assignments.

Notwithstanding the failure of the bank to record the assignment the mortgage could have been enforced against O'Keefe, the mortgagor and the property.

This is not the case of an innocent purchaser for value without notice seeking to maintain his title against a prior lien in which he had no notice, but the case of a judgment creditor seeking to enforce the lien of his judgment against a lien prior in time, of which he had no notice.

A judgment creditor acquires only the rights of his debtor. He takes his lien subject to all of its burdens in the hands of his debtor.

Knell vs. Building Association, 34 Md., 67.

O'Keefe holding the property subject to a lien in favor of the bank, such lien must be superior to the judgment of the plaintiff. The bill must be dismissed as to the Commonwealth Bank.

The plaintiff may prosecute his claim, according to the usual practice, in the foreclosure case, against the excess of the purchase money, if there is any after the payment of the bank's claim.

The deed from Davis to Byrnes was wholly invalid. It was made without the knowledge of Byrnes, and was never delivered.